**In re the Marriage of B.L.E.,
Respondent,**

**v.**

**V.A.E., Appellant.**

**No. WD 41716.**

Missouri Court of Appeals,
Western District.

April 3, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 1990.

Application to Transfer Denied
July 31, 1990.

Ronald R. Holliday, Savannah, for appellant.

Jack Peace, Trenton, for respondent.

Robert Loman, Bethany, for Guardian Ad Litem.

Before NUGENT, C.J., FENNER, J., and WASSERSTROM, Senior Judge.

WASSERSTROM, Senior Judge.

On December 1, 1987, after much bitterness between the parties prior to and during the litigation, their marriage was dissolved by court order, with principal custody of the one child to the mother, subject to visitation rights by the father. After the father took the child for visitation on the week-end of March 19–20, 1988, the mother filed criminal charges that the father had committed rape and sodomy upon the child.

On July 7, 1988, the father moved that, in light of the mother's allegations against him, the court modify the custody order so as to provide for supervised visitation. The mother thereupon filed her motions for an abatement of visitation by the husband or in the alternative that his visitation be subject to supervision. The husband followed with a motion for change of custody from the mother to him.

On July 26, 1988, the court ordered that the husband's rights of visitation be subject to supervision. That order was further modified and the court ordered home studies of both parents, on November 3, 1988.

The whole matter came on for full hearing on January 17 through 23, 1989. After taking the matter under advisement, the trial court entered an order modifying the dissolution decree by placing the primary custody of the child with the father, subject to visitation rights by the mother. In support of that change of custody, the court found as follows:

Having taken the matter under advisement, the Court, now on the 24th day of February, 1989, having reviewed all the evidence, finds that a substantial and continual change in circumstances has been made to render the previous decree of December 14, 1987, unsuitable. In particular, the Court finds there is no basis for the Respondent's accusations of child sexual abuse by the Petitioner even though the Court also finds that Respondent, by the time this trial occurred, was completely convinced in her own mind that child sexual abuse had, in fact, occurred. The Court further finds that the Respondent's emotional stability is questionable, at best, and therefore finds that it would be in the best interests of the child, [name omitted], for her primary care, custody, and control to be placed with Petitioner, B.L.E.

From that order, the mother prosecutes this appeal.

· ■ Before discussing the mother's point on appeal, a preliminary matter requires disposition. The guardian ad litem appointed by the trial court on behalf of the child has filed a brief in this court, which the mother has moved to strike. That motion was taken with the case. The document filed by the guardian is more in the nature of a report to the court rather than an appellate brief. Its contents consist almost entirely of the guardian's observations concerning the child since the change of custody was effected pursuant to the court's order of February, 1989. The report of these observations has never been subject to the right of cross-examination or rebuttal, and of course does not appear in the record on appeal. This court cannot go outside the record on appeal and take cognizance of matters subsequent to the appeal. *Aquamsi Land Co. v. City of Cape Girardeau,* 142 S.W.2d 332 (Mo. 1940); *see also In re Estate of McCahon,* 729 S.W.2d 67 (Mo.App.1987) and *Commercial Credit Equipment Corp. v. Colley,*

485 S.W.2d 625 (Mo.App.1972). The mother's motion is therefore sustained and the guardian's brief is hereby ordered stricken.

The mother presents only a single point to the effect that the trial court erred in ordering the change of custody. That point however is subdivided into five sub-points. The most basic of those sub-points is the third which will be discussed first. The other sub-points will then be taken up in order.

## I.

### The alleged sexual abuse.

■ The mother states in her sub-point C that "substantial evidence established that respondent had sexually abused the minor child and placement with him is not in the best interests of the child." If the father had in fact abused the child, then it would follow as a matter of course that the best interests of the child would be for her not to be placed with her father. However, the fact of sexual abuse was not established.

The mother misstates the applicable rule when she says that substantial evidence established the sexual abuse. It can be conceded that the mother did introduce substantial evidence on that issue; but the rule is that after the trial court found to the contrary, the burden on appeal fell upon the mother as appellant to show that there is no substantial evidence to support the trial court's finding; and in reviewing the evidence, an appellate court should exercise its power to set aside the judgment as being against the weight of the evidence "with caution and with a firm belief that the decree or judgment is wrong." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will now proceed to briefly review the evidence on this issue in light of that controlling principle.

The mother testified that following the father's visitation on the week-end of March 19–20, 1988, the child made statements to her indicating that the father had committed rape and oral sodomy. Members of the mother's family also testified to the child making such statements to each of them. At the suggestion of a psychiatrist who examined the child, the mother taped some of the bedtime exchanges between her and the child and some of the conversations which occurred in automobile travel, and those tapes which confirmed indications of sexual abuse were introduced in evidence.

The mother also introduced the testimony of a doctor to whom she had been referred by the Division of Family Services in order to have the child examined and a tape made by that doctor of her interview with the child. That doctor concluded that the child had been sexually abused, and the tape contained some statements by the child confirmatory of that conclusion. The mother also introduced the testimony of a child psychiatrist who concluded that the child had been a victim of sexual abuse and also the testimony of a third physician who reported physical evidence of sexual abuse.

On the other hand, the husband testified and introduced much confirmatory evidence that on the week-end of March 19–20, 1988, he had taken the child out of town to a state wrestling tournament, where they were in the company of other people at all times. All these people stayed in a college dormitory, with simply no privacy. Under this evidence, the father had no opportunity on the week-end in question to commit the alleged sexual abuse. At the time the mother made her complaints and filed her charges, she was unaware of the wrestling tournament activities and the attendance by the father and child.

Furthermore, the father introduced the evidence of the family doctor to whom the mother had taken the child for examination, and this doctor testified that he found no evidence of sexual abuse. Another doctor, a child specialist, also so testified. A clinical psychologist, to whom the child had been referred for examination by the criminal court before whom the criminal charges against the father had been brought, expressed the opinion that the husband had not sexually abused the child and he further expressed the opinion that the criminal charges were based upon a false report by the mother.

A child psychiatrist had been hired by the guardian ad litem to examine the child and reported that he was unable to reach a conclusion as to the charge of sexual abuse; however, he also reported that it was highly unlikely that abuse had occurred, and his impression was that child abuse did not occur.

A clinical therapist specializing in child sexual abuse conducted an examination at the request of the Department of Family Services. She concluded that there had not been any abuse of the child by the father. That conclusion was also supported by the testimony of social workers in the Division of Family Services who had observed the child and the father over a period of time and who expressed the view that the conduct and attitudes they observed were warm and loving and nothing was observed which would be the cause of any alarm.

In evaluating these conflicting opinions, the trial court was entitled to take into consideration the fact that the father's experts discounted the statements made by the child on the ground that they could have resulted from unintentional coaching and conditioning by the mother, and the tapes made at home and in the automobile were fragmentary and unrevealing with respect to squeezes, hugs or kisses which may have accompanied statements by the child consistent with implication of the father. The trial judge was also entitled to consider the criticisms of the taped interview in the doctor's office on the ground that the interview was conducted under inappropriate conditions and with the use of leading and suggestive questioning. The father's experts described the interview in question as "a textbook example of how not to conduct an interview." And one of the experts considered that the interview had been "a learning experience" for the child. The trial court was further entitled to consider that the prosecuting attorney had dismissed before trial the criminal charges of child sexual abuse which the mother had made against the father.

To summarize, there very plainly was substantial evidence to support the trial court's conclusion, and we cannot say with a firm belief that the court's conclusion was against the weight of the evidence. Under the standard set forth by *Murphy v. Carron*, this sub-point by the mother must be overruled.

## II.

### *The mother's emotional instability.*

In her sub-point A, the mother states that "there was no substantial evidence to support the trial court's finding that the appellant's emotional stability was questionable." We disagree.

There was undisputed evidence that during the course of the dissolution litigation, the mother appeared at the home of the father's present wife, where she engaged in pounding on the door and loud shouting, all of which created a considerable public disturbance. The evidence also showed that the mother kept vigil at that house for hours on end, and on one occasion accosted the present wife's then husband with an offer to testify in favor of that husband in his pending dissolution suit if he would testify in favor of this mother in her dissolution suit. The demeanor and appearance of the mother on that occasion was such that the husband immediately called his then wife to warn her that "there was some crazy woman out here."

The evidence showed that on two occasions prior to March, 1988, the mother had made reports of child abuse on the "child abuse hot line" directed against the father's present wife. In the first telephone report, the mother complained of the child being locked in a closet, and on the second occasion she complained of the child being pushed down a flight of stairs. Investigation by the Department of Family Services found no support or foundation for those charges.

After the mother's charges of child sexual abuse, the circuit court ordered an examination at Children's Mercy Hospital. The evidence shows great recalcitrance by the mother, arguments by her with the nurses and doctor, and the creation by her of much commotion and confusion.

The clinical psychologist who examined the parents as well as the child pursuant to order of the criminal court, came to the conclusion that the mother had made an unintentional false report and an unconscious misrepresentation of child sexual abuse because of anger at the father and extreme defensiveness and denial on her part of that anger. The child psychiatrist employed by the guardian ad litem agreed generally with the report of the clinical psychologist and further stated the impression that while the mother was not consciously misreporting, she may have misinterpreted. He found an urgency by the mother to establish the alleged child abuse and an unusual inability on her part to entertain other possible interpretations.

In view of the foregoing, it cannot be said that there was no substantial evidence to support the trial court's finding of emotional instability, nor can there be a firm belief that the court's judgment was contrary to the weight of the evidence. This sub-point by the mother is therefore denied.

### III.

### *Best interests of the child.*

■ As her sub-point B, the mother states: "The weight of the credible evidence established that it was in the best interests of the minor child to remain in appellant's custody." This sub-point also fails to meet the standard of *Murphy v. Carron, supra.*

The effect upon the child of the sexual abuse charges and everything that entailed was drastic. That put her under enormous stress and caused prolonged emotional upset. The result was arrested development, including her still being in diapers at more than three years of age. The clinical psychologist and the child psychiatrist hired by the guardian ad litem were in agreement that the charges, the examinations, and the antagonism between the parents were extremely traumatic to this child.

On the other hand, the evidence showed generally a close bonding between the child and the father, and the social workers reported that the best parenting skills of the three adults involved were displayed by the father's present wife.

■ In considering the best interests of the child on motions for change of custody, the trial court is vested with a wide discretion. The findings of the trial court should be deferred to unless they are in conflict with a clear preponderance of the evidence and they disclose an abuse of discretion. *Wells v. Wells,* 623 S.W.2d 19, 22 (Mo.App. 1981); *E.C.S. v. J.D.L.,* 529 S.W.2d 423, 425 (Mo.App.1975); *Pelts v. Pelts,* 425 S.W.2d 269 (Mo.App.1968). Under the rule enunciated by those authorities, this sub-point by the mother must be overruled.

### IV.

### *Punitive nature of the order.*

As her sub-point D, the mother states: "The court erroneously applied the law and modified custody as a punitive measure against appellant." On the basis of what has already been held above, it cannot be said that the trial court erroneously applied the law. There is nothing in the record to indicate any animus by the trial judge against the mother nor that he modified custody as a punitive measure against the mother.

This sub-point by the mother must be overruled.

### V.

### *Fitness of the father as custodian.*

■ For her final sub-point, the mother states: "Substantial evidence established that the respondent is not a fit custodian and placement with him is contrary to the best interests of the child." In support of this sub-point, the mother points to the fact that in past years the father drank rather heavily, used marijuana, and conducted an affair with his present wife while still married to the mother.

The father candidly admitted the past conduct mentioned, but insisted that all that had ceased long ago. The social workers had observed the father and his interaction with the child at close range and over

a considerable period of time. In their opinion, the father was a good parent and unobjectionable for custody. Even the mother at the time of the dissolution proceeding testified that he was "perhaps one of the best fathers [she] had ever seen."

Under *Murphy v. Carron* and the other authorities cited above, this sub-point by the mother must be overruled.

All of the mother's points having been overruled, the judgment of the trial court should be and is hereby affirmed.

All concur.