**Ronald NICHOLS, Respondent,**

**Guardian Ad Litem, Respondent,**

v.

**Vicki A. (Nichols) BERAN, Appellant.**

**No. WD 54886.**

Missouri Court of Appeals,
Western District.

Dec. 8, 1998.

Elvin S. Douglas, Jr., Crouch, Spangler & Douglas, Harrisonville, for appellant

G.M. Mouse, Independence, Attorney for Nichols.

W.Christopher Hodge, Knob Noster, Guardian ad Litem, for respondent.

Before Presiding Judge ALBERT A. RIEDERER, Judge HAROLD L. LOWENSTEIN and JUDGE LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Appellant Vicki A. (Nichols) Beran (Mother) appeals the trial court's January 13, 1997 judgment transferring custody of the parties' son, Sean, to his father, Ronald Nichols (Father). Mother argues the trial court erred in transferring the legal custody of Sean for the reason that there was insufficient evidence to establish that there had been a substantial and continuing change of circumstances requiring a change of custody. Mother also

argues the trial court erred in denying the admission as an exhibit of a tape recording between Father and his current wife's former husband, in fixing the child support to be paid by her to Father without preparing a Form 14, and in granting Father affirmative relief by transferring custody of Sean at a time when Father was nearly $10,000.00 delinquent in child support owed to Mother. We reverse in part, affirm in part, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father's marriage was dissolved on November 29, 1989. Mother was awarded primary custody of the two minor children, Sean and Courtney, and Father was ordered to pay child support. Sean moved in with Father pursuant to a temporary custody order in December 1995. Both Mother and Father allege the other has acted improperly. We deal with these allegations later in this opinion. The current proceedings between the parties began on February 1, 1995, with the filing by the Prosecuting Attorney of Johnson County, Missouri of an Application for Contempt Citation and the issuance by the court, on February 16, 1995, of an Order to Show Cause directed against Father for the nonpayment of child support. Father answered and counterclaimed for modification of custody. Various hearings were held on the original contempt action and the motion to modify. The court held Father in contempt on March 19, 1996. The court heard evidence on the motion to modify custody on six dates between June 10, 1996 and December 30, 1996, and appointed a Guardian ad Litem on July 7, 1996. In addition, on December 16, 1996, the court took testimony as part of the habeas corpus proceeding involving Father's failure to provide support. That testimony was, by stipulation, considered a part of the record on the modification motions.

On January 13, 1997, the court found a substantial change of circumstances which justified modifying custody of Sean from Mother to Father. The court ordered each party to pay child support for the child in the other's care, and then offset the amounts, as a result of which it ordered Father to pay Mother child support in the amount of $265.00 per month. On May 28, 1997, the judge set aside the Order of Contempt previously entered on April 22, 1996, because of concerns about notice. On June 12, 1997, Mother asked the court to declare the remainder of the judgment final for purposes of appeal, so that the custody and related issues could be finally resolved without waiting for the contempt proceedings brought by the prosecutor to be completed. The trial court so ordered and this appeal followed.

## II. STANDARD OF REVIEW

■ The appellate court must affirm a trial court's order modifying a dissolution decree unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Welker v. Welker*, 902 S.W.2d 865, 867 (Mo. App.1995); *Moore v. Moore*, 849 S.W.2d 652, 654 (Mo.App.1993). "In considering the best interest of the child on motions for change of custody, the trial court is vested with a wide discretion. The findings of the trial court should be deferred to unless they are in conflict with a clear preponderance of the evidence and they disclose an abuse of discretion." *B.L.E. v. V.A.E.*, 791 S.W.2d 427, 431 (Mo.App.1990).

## III. LEGAL ANALYSIS

### A. Custody of the Minor Children

In her first point on appeal, Mother argues the trial court erred in transferring the legal and physical custody of Sean to Father because there was insufficient evidence to establish that there had been a substantial and continuing change of circumstances which would warrant a change of custody. Mother claims the trial court's order relied too heavily upon the preferences of Sean because at different times he had indicated a desire to live with both parents, and, at 10 years old, was inclined to tell each parent what they wanted to hear. Mother also argues that Father's historical problem of alcoholism, his current use of Xanax, and an ongoing investigation by the Lee's Summit Police Depart-

ment into alleged abuse of Father's stepson, all weighed against a transfer of Sean's custody to him. Finally, Mother claims the evidence demonstrated a close relationship between Sean and his sister Courtney and there was no evidence to support the trial court's decision to separate the children.

Section 452.375.2 sets forth factors to guide a trial court in making an initial custody determination. These factors include:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state; and

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

§ 452.375.2 RSMo 1994.

∎ A court cannot modify a prior custody decree unless it finds that, based on facts that have arisen since or were unknown at the time of the prior decree, a substantial change has occurred in the circumstances of the child or the child's custodian. Once it determines that a substantial change of circumstances has occurred, then the court must consider whether, in light of this change of circumstances, a modification is necessary to serve the best interests of the child. § 452.410 RSMo 1994; *Baumgart v. Baumgart*, 944 S.W.2d 572, 575 (Mo.App. 1997). When considering the best interests of a child, a court must consider all relevant factors that would affect the child. *Id.* Generally, the trial court is not required to explicitly state what it found to be the change of circumstances, if the evidence is sufficient to support a finding that such a change occurred. *Id.* at 576.

∎ In the judgment entry entered on January 13, 1997, the trial court set forth the following as its rationale for modifying custody of Sean:

The Court finds that most of the evidence offered by Petitioner and Respondent is not credible. The Court finds that both the parties have intentionally misled this Court with their evidence and accusations. The Court finds that all testimony that does not support the judgment of this Court is not credible.[1] The Court further finds that both parties have ignored the past orders of this Court. This Court sadly finds that neither parent is acting or attempting to act in the best interests of their children. The only motivating forces for either parent in this case is their own financial best interest and destroying the

---

1. We strongly discourage trial courts from making statements like this one, that the court finds "all evidence that does not support the court's judgment is not credible." Such a statement cannot be literally true, for surely the trial court did not disbelieve every positive statement about the Mother, or every other piece of evidence which it did not affirmatively rely on in support of its ruling. The statement thus does

nothing to aid the court's analysis and could only negatively affect this Court's review. We presume that what the court means was that, where the evidence presented by Mother and Father conflicted, it found the evidence presented by Father to be more credible, and that the weight of the evidence supported granting custody to the Father.

life of the ex-spouse. The Court specifically finds that the Respondent, Vicki A. Nichols (Beran), has make (sic) every effort to destroy the relationship of the children with their father and has denied, refused and interfered with visitation to the father without good cause. The mother repeatedly belittles and denigrates the father to the children. The Court finds that the Petitioner, Ronald S. Nichols, has intentionally failed to provide support to his children for the purpose of causing financial problems to his ex-spouse. The Court finds the income of Petitioner, Ron Nichols, to be $32,000.00 per year and an (sic) attributes an income to Vicki A. Nichols in the amount of $12,000.00 per year. The Court finds a continuing and substantial change of circumstances such as to justify the modification of custody, visitation and child support as to both children. The Court, however, is concerned that the parties will continue to use the children as pawns in their larger struggle to destroy the other's life. The best interests of these children mandate that this Court make an attempt to cool the fires of hate between these parties, and to encourage the parents to consider the interests of their own children in future action. The Court finds that the best interests of the children will be served by changing only the custody of Sean to the father.

IT IS ORDERED, ADJUDGED AND DECREED that a continuing and substantial change of circumstances exists that require the modification of custody, visitation and child support from the Judgment Entry of November 29, 1989 which was modified by the Judgment Entry of April 15, 1993. The Court finds upon the basis of facts that have arisen since the prior decree that a change has occurred in the circumstances of the child, Sean, and his custodian and that the modification is necessary to serve the best interests of the child. The Court after considering the factors enumerated in Section 452.375 R.S.Mo finds that Petitioner, Ronald S. Nichols, is the fit and proper person to have the legal and physical care and custody of Sean Christopher Nichols, subject to specific rights of visitation in Respondent as set forth below. The legal and physical care and custody of Courtney Nicole Nichols shall remain with Respondent, Vicki A. Nichols (Beran), subject to specific rights of visitation in Petitioner as set forth below.

■ In its Order, the trial court thus specifically found that Mother had made "every effort to destroy the relationship of the children with their father and has denied, refused and interfered with visitation to the father without good cause. The mother repeatedly belittles and denigrates the father to the children." The policy of this State is to encourage continued loving and caring relationships between divorced parents and their children and to afford ample opportunity for close contact between both parents and their children. Our courts have previously held that facts showing an attempt by one parent to alienate a child from the other parent can form the basis for modification of custody. *See Wilson v. Sullivan,* 922 S.W.2d 835, 837 (Mo.App.1996).

■ The trial court also had before it the GAL's recommendation that custody of Sean be changed to Father, in part because Sean wanted to live with Father and had been doing so pursuant to a temporary custody order since December 21, 1995. Missouri courts have consistently found it beneficial to allow children to remain with the parent who has had custody over a long period of time as against uprooting the child. *See Baumgart,* 944 S.W.2d at 577. For these reasons, the fact that the nominally non-custodial parent has in fact had custody of the child, while not determinative, is a very relevant consideration in making the ultimate determination whether the non-custodial parent has met the burden of showing a substantial and continuing change of circumstances which justifies a modification of custody. *Id. See also Morrison v. Morrison,* 676 S.W.2d 279 (Mo.App. 1984) (holding custodial parent's relinquishment of real and actual care and custody of the children to the grandparents would be sufficient to authorize a change of custody to the non-custodial parent).

In addition, Father has remarried, is a partner in his own business and was found by

both the GAL and the trial court to be a fit and proper person to have custody of Sean. Moreover, the trial court interviewed both Sean and his sister Courtney on more than one occasion. Sean testified one of the reasons he wanted to live with Father was that he has never felt comfortable around Mother's current husband because, in the early period of their relationship, his stepfather yelled at him and was mean. Sean testified to an incident when he would not help his mom clean out a closet, and his stepdad, "... picked me up by my hair, and, like, did this, and then threw me on my waterbed." The court was also aware that Sean's grades had improved while in the custody of Father, and in general, Sean seemed to be a well-adjusted and happy boy while in Father's custody. While Mother presented contrary evidence that Sean wanted to live with her, and did well in her care, it was up to the trial court to weigh this evidence. Based on this evidence, the court did not err in finding that there had been a substantial change in circumstances.

Mother also argues that it was not in Sean's best interests to be placed in Father's custody, and that the trial court abused its discretion because its finding to the contrary ignored Father's problems of alcoholism, drug dependency and the allegations of sexual abuse relating to Father's stepson. The GAL recognized and acknowledged Father's past alcohol abuse. The trial court also heard evidence regarding this issue. The GAL concluded that Father had made efforts to ameliorate its effects and believed the children's testimony rebutted any contentions of current alcohol abuse. Father testified he has not used alcohol in any manner since he voluntarily entered a 30-day alcohol abuse program sometime in 1994. The GAL did express concerns regarding Father's personality disorder and possible abuse of Xanax, and the GAL recommended that prior to initiating a change of custody the trial court require Father to:

A. Obtain a narrative report from his physician regarding the following:

(1) Is Petitioner addicted to Xanax.

(2) What efforts is Petitioner taking to ween himself off of that drug?

(3) How has that addiction, if any, manifested itself? Has it affected his interpersonal relations with his wife, family, children, and in what way, if any?

■■■■ The duty of the GAL is to protect the best interests of the child and it is the GAL's duty to stand in the shoes of the child and weigh the factors as the child would if his or her judgment were mature. *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 385 (Mo.App.1993). The GAL must investigate and present its perspective to the trial judge, thereby enabling the court to render a decision in accordance with the statutory standard of "best interests of the child." While the GAL serves an important role in advising the trial judge, the court is not bound by the opinion or recommendation of the guardian ad litem. *Id.* While we see merit in the GAL's recommendations regarding his concerns over Father's use of Xanax, we cannot say the trial court abused his discretion in failing to adopt them. There was limited evidence regarding the alleged abuse of Xanax at trial. It does appear that Father suffers from some sort of panic attacks and continues to take prescription Xanax. However, there was no clear evidence of drug abuse or any negative effect on Sean. Overall, Father has candidly admitted to his past and present problems and has taken steps to ameliorate their effects. While there were also allegations of child abuse, the trial court actively considered this issue, and went so far as to question the witnesses about it himself. It appears that he, like the GAL, did not find it credible.

■■■■ Finally, Mother argues the trial court erred in separating the two children from one another. While Mother is correct that, absent some exceptional circumstances, siblings should not be separated, *Replogle v. Replogle*, 903 S.W.2d 551 (Mo.App.1995), we disagree with Mother that the trial court could not have found such circumstances were present here. Courtney has consistently stated her preference to live with Mother, while Sean has usually indicated his preference to live with Father, and both children testified that it would not bother them to live apart. In addition, the children attend different schools, participate in different activi-

ties and have different friends. The trial court found both are surprisingly happy and well-adjusted in their current situations despite a wish by both that the fighting between their parents would stop. The trial court has wide discretion in providing for child custody and we will not interfere unless the welfare of the children requires a different result. *See Cutbirth v. Cutbirth,* 758 S.W.2d 187, 188 (Mo.App.1988).

Based on the evidence recounted above, we do not find the trial court abused its discretion in transferring the custody of Sean to Father.[2] The trial court dealt with the individuals involved in this suit for over two years and had ample evidence on which to base its decision. We affirm the custody decision.

### B. Exclusion of the Tape Recording

In her second point on appeal, Mother argues the trial court erred in denying the admission of a tape recording of a telephone conversation between Father and his current wife's former husband because it demonstrated the "hostile and unreasonable tone and attitude of petitioner in dealing with the children." Mother claims the denial of the admission was based upon representation by Father's attorney that the law of Missouri did not contain an exemption for otherwise inadmissible tapes, similar to the federal statutes.

■ Mother cites us to Section 542.402.2(3) RSMo 1994[3] which provides that it is not unlawful:

For a person not acting under law to intercept a wire communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act.

Whether or not the actions of Mr. Jourdan in recording his phone conversation with Father are criminal under this provision is not determinative of whether the court was required to admit the tape in this civil proceeding. Section 542.418.1 RSMo 1994 provides:

The contents of any wire communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any civil or administrative proceeding, except in civil actions brought pursuant to this section.

§ 542.418(1); *See also Lee v. Lee,* 967 S.W.2d 82, 85 (Mo.App.1998) (specifically holding such tapes are not admissible). The trial court did not err in excluding the tape.

### C. Failure to Prepare a Form 14

Mother also argues the trial court erred in determining the amount of child support to be paid because it did not prepare a Form 14 and because it ordered the parties to "split equally all medical costs for the children."

So far as the record shows, neither party offered a Form 14. The GAL's report refers to a Form 14, but it is not included in the record on appeal. The trial court's judgment indicates it used a Form 14 in calculating the amount of support, for the order states that:

The Court finds that Petitioner's child support obligation from form 14 for Courtney to be $424 and Respondent's child support obligation from form 14 for Sean to be $159. *After setoff in accordance with Note C on Comments For Use the Court orders Petitioner to pay Respondent child support in conformity with Form 14 in the amount of $265.00 per month beginning January 1, 1997.* The parties shall split equally all medical costs for the children.

The record does not include a Form 14 prepared by the judge, however, and it is evident that he did not use the GAL's Form 14, at least without modification, for the child support figure he reached was not that recommended by the GAL.

■ "The use of Form 14 in calculating child support is mandatory. The presumption in Rule 88.01 provides for the automatic consideration of the guidelines in a Form 14

---

2. While counsel for appellant has suggested that the judge's custody decision might be affected by matters that have arisen since the court's original decision, any such developments are not appropriate for our consideration on appeal, but rather can be raised only by means of a motion to modify.

3. S.B. 693, 1994, repealed the expiration date of 8–24–94 for Sections 542.400 to 542.424. S.B. 693 became effective 1–1–95.

computation." *Woolridge v. Woolridge*, 915 S.W.2d 372, 378 (Mo.App.1996). *See also Neal v. Neal*, 941 S.W.2d 501 (Mo. banc 1997). Without a Form 14 in the record, and an explanation of any rejection or rebuttal by the judge, we have no way of knowing how the trial court reached the figures it did. In this case, there were a number of contested issues and factual complexities which the court was required to consider, such as what consideration should be given to the children's Social Security payments. We have no way to review the trial court's child support determination without a copy of the Form 14 or more detail as to how the trial court calculated the amount of support. We therefore must remand for preparation of a Form 14, or its inclusion in the record if one was prepared, so that we have sufficient information to review the judgment.

We also find the trial court erred in ordering that the parties shall split equally all medical costs for the children without any consideration of available insurance coverage. Section 454.603 states that, when the circuit court has jurisdiction to establish an order for child support in a dissolution proceeding, the court "may require that a child be covered under a health benefit plan. Such a requirement shall be imposed whenever a health benefit plan is available at reasonable cost through a parent's employer or union." § 454.603 RSMo 1994. Thus, the court is required to order that a parent provide a child with coverage where there is evidence that the parent is able to do so through his employer at a reasonable cost. *Hosack v. Hosack*, 973 S.W.2d 863 (Mo.App.1998). *See also Pease v. Pease*, 877 S.W.2d 681 (Mo. App.1994). Father testified that he had full health insurance, medical benefits, eye and dental coverage through his current wife's Postal Worker's Union and that those benefits would continue for both Sean and Courtney. There was no evidence presented that Mother would have similar benefits available to her. Thus, Section 454.603 required the court to order Father to provide this coverage.

### D. Father's Intentional Failure to Provide Child Support

In her final point on appeal, Mother argues that the trial court's finding that Father, "has intentionally failed to provide support to his children for the purpose of causing financial problems to his ex-spouse" would warrant a dismissal of Father's motion for change of custody under the decision of *Wagner v. Wagner*, 945 S.W.2d 689 (Mo.App. 1997). *Wagner* recognized that compliance with a prior court order *may* be a prerequisite to obtaining affirmative relief. Our courts have held, however, that, "it is not enough to grant a motion to dismiss a motion to modify on the basis that arrearages in maintenance, child support, or attorney's fees exist. There must be evidence that the party making the motion to modify had the ability to comply with the order." *Markovitz v. Markovitz*, 945 S.W.2d 598, 600 (Mo.App. 1997).

Here, the court below found that Father had intentionally failed to pay past child support, and that he did so specifically in order to cause financial problems to Mother. Certainly this behavior cannot be countenanced, and in itself would have provided a sufficient basis for the trial judge to deny affirmative relief to Father. Clearly, however, the court considered this evidence but nonetheless determined that other factors made it in the best interests of the children to give Father custody of Sean. Moreover, Father testified at trial that he was now paying his current child support obligation plus his arrearage, that he was paying over twice what he had been ordered to pay since his last court appearance, and that he was doing everything he could to get caught up. In these circumstances, we think it was up to the trial court to determine whether to grant affirmative relief, and we cannot say he abused his discretion in granting affirmative relief here, despite the fact that back child support was owing.

We do find, however, that the trial court abused its discretion in determining a new child support amount without, apparently, considering the effect of the delinquent support still due. It's failure to deal with these delinquent payments may have resulted from the fact that the issue of Father's contempt for failure to make these payments is still pending below. Without regard to

whether Father is in contempt, however, the court, having decided Father intentionally failed to pay past due child support, must determine the amount past due and how the parties should take it into account in making their current payments.[4] We direct the court to do so on remand.

For the reasons set out above, we affirm the trial court's judgment as to the determination of custody, but reverse and remand with instructions to the trial court to complete a Form 14, to order Father to provide medical insurance coverage, and to consider all relevant factors in deciding the amount of child support, including such factors as back support due.

Presiding Judge ALBERT A. RIEDERER and Judge HAROLD L. LOWENSTEIN concur.

---

4. For instance, an offset of the amounts Mother would owe Father for Sean's support by the past due amounts Father owes Mother for past child support may be appropriate, at least to the extent the court does not abate these past due amounts by the social security payments Mother continued to receive for Sean even when he was living with Father. *See generally Payne v. Payne,* 695 S.W.2d 494, 497 (Mo.App.1985); *Mercantile Trust Co., Nat. Ass'n. v. Mosby,* 623 S.W.2d 22, 24 (Mo.App.1981); *Warren v. Warren,* 601 S.W.2d 683 (Mo.App.1980).