Stephanie C. (Manns) WALLACE, Appellant,

v.

Michael Scott CHAPMAN, Respondent.

No. WD 59023.

Missouri Court of Appeals, Western District.

Jan. 15, 2002.

854

Anita I. Rodarte, Kansas City, for appellant.

Steve D. Burmeister, Independence, for respondents.

Before PATRICIA BRECKENRIDGE, Presiding Judge, JOSEPH M. ELLIS, Judge and GENE R. MARTIN, Senior Judge.

JOSEPH M. ELLIS, Judge.

Appellant Stephanie Wallace ("Mother")[1] appeals from a judgment entered in the Circuit Court of Jackson County modifying its prior decree of dissolution of marriage to give physical custody of her son Seth Wallace–Chapman to his father, Respondent Michael Chapman ("Father").

Father and Mother were married on December 14, 1991. The couple separated on March 7, 1992. On June 20, 1992, Seth Wallace–Chapman was born of the marriage.

On August 13, 1992, the Circuit Court of Jackson County entered its judgment dissolving the marriage between Father and Mother. The judgment awarded Mother custody of Seth and provided for visitation for Father. Father was ordered to pay $150 per month in child support.

In January 1993, Mother moved with Seth to Texas without the permission of the court or notice to Father and refused to disclose their whereabouts to Father. While in Texas, Mother used a false address on her checks and on her IRS filings and had her mail sent to an address other than her residence. She had child support payments for Seth sent to an address in Independence, Missouri.

In January 1996, Father learned that Seth was temporarily staying with his maternal great-grandmother in Independence, Missouri. Acting on that information, Father filed a motion to modify physical custody. Mother subsequently filed her answer to Father's motion to modify and a counter-motion for increased

---

1. From the time of the original decree of dissolution to present, Mother's name has changed from Stephanie Chapman to Stephanie Manns to Stephanie Wallace.

child support and for contempt for failure to pay child support. After Mother filed her pleadings, Father filed a motion for contempt against Mother for moving to Texas without the court's order or his permission.

The various motions were heard by a family court commissioner on March 28 and 29, 1996. On April 3, 1996, the Commissioner entered her judgment. The commissioner found that Mother had violated § 452.377 by intentionally removing Seth from the court's jurisdiction in January 1993 for the purpose of interfering with Father's visitation and relationship with Seth. The commissioner held that this constituted a substantial change in circumstances, but she found that it was not in Seth's best interests to change custody. The commissioner denied Mother's oral motion that she be allowed to remain in Texas and ordered her to return with Seth to Missouri. The commissioner found Mother in contempt and provided her with an opportunity to purge that contempt by providing Father with a period of compensatory visitation in August 1996. The commissioner also increased Father's child support amount to $311 per month and set forth a new visitation schedule. The commissioner found that Father was current on his child support payments through February 1996. While the parties were informed that they could file a motion for rehearing by a judge of the circuit court, neither parent sought rehearing, and the judgment became final.

While the motions were pending before the commissioner, Mother filed two allegations of abuse against Father with the Division of Family Services ("DFS"). The first allegation was filed on March 27, 1996, the day before trial, and alleged inadequate supervision. The second allega-

tion was made on March 29, 1996, the final day of trial, and claimed that Father had bruised Seth's hips spanking him. Mother did not inform the commissioner of either of these complaints. Both allegations were later found to be unsubstantiated by DFS.

On May 31, 1996, Mother filed allegation of abuse against Father's fiancé, Lucy Wallace. That allegation was later found unsubstantiated.

In July 1996, Mother asked Father if she could take Seth to her sister's wedding during the period of compensatory visitation that Father was supposed to have in August 1996. Father denied that request.

Subsequently, on July 23, 1996, after Seth returned from his visitation with Father, Mother took Seth to the Buckner Police Department and claimed that Father had caused a bruise on Seth's arm during visitation. That visit to the police department resulted in a hotline call to DFS, following which DFS opened an investigation into potential abuse by Father. On August 1, 1996, after Seth returned from visitation with Father, Mother again took him to the Buckner Police Department and claimed that Father had caused further bruising on Seth's leg. That visit resulted in another hotline call to DFS.

After this second report, the DFS investigator, Terri Reynolds, told Mother and Father that DFS wanted Father's visitation restricted to supervised visitation until the investigation was completed. Ms. Reynolds told Mother that Father's unrestricted visitation should resume after they received the DFS determination in the mail. Ms. Reynolds completed her investigation in August 1996, and her report was mailed to the parties on September 4, 1996.[2] However, despite having received

2. Ms. Reynolds concluded her investigation without having interviewed Father or any

the DFS report, Mother continued to allow only supervised visitation between Father and Seth.

On October 4, 1996, as a result of being denied unsupervised visitation with Seth and not receiving the compensatory visitation prescribed by the court to purge Mother's contempt, Father filed an Application for Contempt and Show Cause and a Motion for Modification of Custody, Child Support, Attorney's Fees and Costs. On October 7, 1996, the commissioner entered her Order to Show Cause, ordering Mother to appear on November 18, 1996, and show cause why she should not be held in contempt for failing to comply with the judgment of April 3, 1996. Mother was served with the order to show cause and Father's motion for modification of custody.

That same day, Mother met with the current DFS caseworker and devised a Family Treatment Plan in which it is noted that the "parents will voluntarily continue to cooperate with supervised visitation." Father was not invited to participate in that meeting and was not sent a copy of this document.

The commissioner heard Father's motions on November 18, 1996. On November 22, 1996, she entered her judgment granting Father's motion to modify, transferring physical custody of Seth to Father. The commissioner also found Mother in contempt and ordered her to pay Father an amount equivalent to the child support that Father had paid while being denied unsupervised visitation. Father assumed physical custody of Seth on that date.

On December 6, 1996, Mother filed a motion for rehearing before a circuit judge and a motion to set aside the commission-

er's judgment. On January 3, 1997, the circuit court denied Mother's motion for rehearing. On January 6, 1997, the commissioner denied Mother's motion to set aside the judgment. Mother then filed an appeal to this Court which was denied for lack of jurisdiction because no final appealable judgment had been entered by the circuit court. *Chapman v. Chapman*, 967 S.W.2d 660, 661 (Mo.App. W.D.1998).

Thereafter, on April 7, 1998, the circuit court entered a judgment adopting the findings and recommendations of the commissioner as the final judgment of the circuit court. Mother appealed that judgment. On May 19, 1999, this Court reversed the circuit court's judgment based upon the fact that a guardian ad litem had not been appointed to represent Seth. *Manns v. Chapman*, 990 S.W.2d 102, 107 (Mo.App. W.D.1999). After this court's mandate was issued, Seth returned to Mother's custody.

On May 10, 1999, Father filed his First Amended Motion for Modification of Custody, Child Support, Visitation and Attorney's Fees. The commissioner appointed a guardian ad litem to represent Seth on May 21, 1999. On June 8, 1999, Mother filed a counter-motion for attorney's fees.

The commissioner conducted hearings on Father's motion on August 2, 3, and 4; September 1 and 10; and October 13, 1999. Nine months later, on July 17, 2000, the commissioner entered her judgment finding that there had been a significant and compelling change in the circumstances of Seth and his mother and that Seth's best interests dictated that custody of Seth be transferred to Father. The commissioner found that Mother had interfered with Father's parental and visitation

---

supporting witnesses. In her report, Ms. Reynolds found probable cause of abuse. That finding was later overturned upon re-

view, and the allegations were found to be unsubstantiated.

rights and with the father/son relationship since the previous judgment of April 3, 1996. The commissioner noted that from August 1996 through the hearing in November 1996 Mother restricted Father's visitation without a court order, refused to allow Father telephone contact with Seth, and failed to provide the compensatory visitation previously ordered by the court. The commissioner further noted that Seth had spent a significant amount of time in Father's custody and that Mother had refused to sign a medical release for Father as ordered in the April judgment.

On August 10, 2000, the circuit court entered its judgment adopting the commissioner's findings and recommendations as the judgment of the court. Mother brings five points on appeal.

■ In reviewing a custody modification case, our review is governed by the standards of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *In re McIntire*, 33 S.W.3d 565, 568 (Mo.App. W.D.2000). "We will reverse the court's judgment only if there is no substantial evidence to support it, it is against the weight of the evidence, or if it erroneously declares or applies the law." *Huffman v. Huffman*, 11 S.W.3d 882, 885 (Mo.App. W.D.2000).

■ We give greater deference to the trial court's determination in child custody proceedings than in any other type of case. *Brandow v. Brandow*, 18 S.W.3d 584, 587 (Mo.App. W.D.2000). "A trial court is vested with considerable discretion in determining custody questions, and appellate courts should not overturn the trial court's findings unless they are manifestly erroneous and the child's welfare compels a different result." *In re C.N.H.*, 998 S.W.2d 553, 557 (Mo.App. S.D.1999). "The judgment must be affirmed under any reasonable theory supported by the evidence and should be set aside only upon a firm belief that the trial court's judgment was incor-

rect." *Baumgart v. Baumgart*, 944 S.W.2d 572, 575 (Mo.App. W.D.1997). As long as the record contains credible evidence to support the trial court's beliefs, we will not substitute our judgment for that of the trial court. *In re C.N.H.*, 998 S.W.2d at 557.

In her first point, Mother challenges the trial court's finding that she denied visitation to Father and interfered with the father/child relationship from August 1996 until Father assumed custody in November 1996. Mother claims that this finding was not supported by substantial evidence and was against the weight of the evidence.

The contention is devoid of merit. The record clearly contained sufficient evidence to support the trial court's finding. Mother concedes that she did not allow Father to have unsupervised visitation with Seth, as provided in the court's previous decree, from August through November 1996 and that she did not have a court order to restrict Father's visitation in this manner.

Mother claims that she believed that DFS had the authority to restrict visitation and that she was merely following their instructions in restricting Father's visitation with Seth during this time period. But the trial court was not required to accept Mother's testimony in this regard as credible. *In re McIntire*, 33 S.W.3d at 568 (quoting *K.J.B. v. C.A.B.*, 883 S.W.2d 117, 121–22 (Mo.App. W.D.1994)) ("We defer to the trial court's assessment of witnesses' credibility and accept the trial court's resolution of conflicting evidence.").

While Mother contends that "[n]othing in the evidence established that [Mother]'s actions were motivated by anything other than a desire to protect her child and comply with the directives from the State agency charged with protecting children," the evidence sufficiently supports a deter-

mination by the trial court that Mother had other motives for interfering with Father's visitation. The record reflects that DFS's recommendation that Father be limited to supervised visitation with Seth during the course of its investigation was the direct result of Mother's unsubstantiated claims of abuse against Father. The trial court was free to disbelieve Mother's testimony that she had valid reasons for making the various reports of abuse. *See In re C.N.H.,* 998 S.W.2d at 557 (quoting *Cornell v. Cornell,* 809 S.W.2d 869, 874 (Mo.App. S.D.1991)) ("Despite Mother's claims that she denied visitation only because she believed Daughter had been subjected to sexual abuse while in Father's care, that she 'was just trying to protect her,' and that her actions 'were consistent with her concern for her daughter,' the trial judge was not 'required to accept the denials, excuses, or charges offered by [Mother].' ").

Moreover, Mother continued to deny Father unsupervised visitation after she received notice that DFS's investigation was complete, despite being told that full visitation should resume at that time. While Mother claims that the evidence establishes that the restrictions she imposed after receiving the investigation report were prescribed by the family treatment plan developed by Mother and the DFS caseworker, the caseworker indicated that he had no reason to restrict visitation, and Father was not invited to participate in that meeting and was never provided with a copy of the family treatment plan. From the language used in the family treatment plan indicating that Father and Mother had agreed to continue supervised visitation, it may be reasonably inferred that Mother incorrectly told the case worker that Father had agreed to such restrictions on visitation. Furthermore, the family treatment plan was drafted after Father filed his motion for contempt. As noted by the trial court during trial, the family treatment plan was not devised by Mother and the caseworker until over a month after the DFS investigation report was released and Father's visitation should have resumed. Accordingly, at the very least, the record reflects that Mother prevented Father from having unsupervised visitation for over one month without any type of instruction from DFS and in violation of the court's previous decree.

There was ample evidence to support the trial court's finding that Mother intentionally interfered with Father's visitation and the father/child relationship between August and November 1996.

Mother also attacks the trial court's finding that she had refused to allow Father to have telephone contact with Seth between August and November 1996. Mother claims that there is no evidence that she did not allow Father the two telephone calls a week he was allowed under the previous order.

However, the record contains testimony from Father that he would frequently call Seth and have Mother refuse to put him on the phone. Father also testified that he left numerous messages on Mother's answering machine and would not get a call back. Father testified that, prior to the November 18, 1996 hearing, he had only been allowed to see or talk with Seth eight to ten times over the past couple of months. Since Father would have been entitled to sixteen phone calls and at least twelve visits over a two month period, the trial court could reasonably have found that Mother had denied Father some of the telephone contact mandated by the original decree. In addition, Father testified that Mother would make him talk to Seth over the speaker-phone so that she could monitor the conversations. The record does not reflect that DFS ever told

Mother that phone conversations should be monitored and supervised telephone contact was certainly not provided for in the April 3, 1996 decree. The trial court's finding that Mother had refused to allow telephone contact between Father and Seth was supported by sufficient evidence and was not against the weight of the evidence.

Mother also claims that the trial court's finding that she had refused to sign a medical release as ordered in the April 1996 decree was not supported by the evidence. But the record contains testimony that Mother repeatedly refused to sign the medical release until the November 18, 1996 hearing. While Mother claims that no evidence was presented that Father could not have obtained medical information without the release, that argument has no bearing on whether Mother had refused to comply with the April decree and sign such a document. The trial court's finding was supported by sufficient evidence in the record.[3]

 In the remainder of Mother's first point and in her second, third, fourth and fifth points, Mother challenges the sufficiency of the evidence to establish that a significant change in Seth or Mother's circumstances had occurred since the entry of the previous judgment. "A court cannot modify a prior custody decree unless it finds that, based on facts that have arisen since the prior decree, a change in circumstances has occurred making modification of the prior order in the best interests of the child." *Baumgart,* 944 S.W.2d at 575–76. "A finding of a change in circumstances making the prior decree unreasonable is a 'precursor to a finding that the best interests of the child necessitate modification.' " *Tilley v. Tilley,* 968 S.W.2d 208, 212 (Mo.App. S.D.1998) (quoting *Bomar v. Kurtz,* 951 S.W.2d 657, 660 (Mo.App. W.D.1997)). "If the evidence 'wholly fails' to show a change in circumstances that makes the prior decree unreasonable, then there is not a change in circumstances upon which a modification of child custody can be based." *Id.* "Once custody is adjudicated, the presumption is that the custody as originally decreed remains suitable and the burden of showing a substantial change of condition is on the moving party." *Id.*

In her second point, Mother claims the trial court erred in modifying custody based upon the fact that she had changed employment and moved numerous times in the previous four years. While the judgment does contain factual findings related to Mother's four job changes and four changes of residence, it does not reflect that the trial court based its finding of a significant change in circumstances solely on these facts. Certainly changes in residence and changes in employment of the custodial spouse may be considered by the trial court in assessing whether a significant change has occurred in the circumstances of the custodial spouse or the child to the extent that they have an adverse impact on the child. The trial court could properly consider this evidence in making its determination, and there is no indica-

---

**3.** Also in her first point, Mother claims that the trial court improperly modified custody as a method of punishing her for failing to comply with the court's orders. Mother claims, without citation to the record, that the trial court did not change custody on the basis of a change in circumstances and that it was merely using a change in custody as a method of enforcing the court's orders. This claim is simply not supported by the record. The judgment clearly reflects that the trial court modified custody in accordance with § 452.410 based upon findings that a substantial change in circumstances of Mother and Seth had occurred since the prior decree and that a change in custody was in the best interests of the child.

tion that the court solely relied on it or gave it undue consideration. *In re McIntire*, 33 S.W.3d at 568.

In her third point, Mother contends the trial court improperly changed custody based upon the fact that Seth had been in the custody of Father for over three years in determining that a significant change in circumstances had occurred since the previous order. Once again, while the trial court made factual findings in this regard, the judgment does not reflect that this was the sole factor relied upon by the trial court in finding that a substantial change had occurred in the circumstances of Mother or Seth.

Furthermore, the trial court could properly have considered this fact in determining whether a significant change of circumstances had occurred. We have previously held that a trial court, in evaluating whether to modify a prior custody decree, may properly consider where the children have been residing in the years prior to the court's ruling, even if such residence is pursuant to a temporary custody order entered in the then pending action. *Baumgart*, 944 S.W.2d at 576–77. In *Baumgart*, the children resided with their mother for 2½ years pursuant to a temporary custody order entered by the court after the motion to modify was filed. *Id.* at 576. On appeal, we noted that § 452.375.2 sets forth factors the court should consider in determining whether to modify custody based on matters arising since the original decree. *Id.* at 577. We found that factor (3), the interaction and interrelationship of the child with his parents, siblings and others affecting the child's best interests, and factor (4), the child's adjustment to his home, school and community, clearly require the court to consider where the children have been residing since the prior custody decree. *Id.* Thus, we held that the actual custody arrangement that existed during those 2½ years was highly relevant to the decision on the motion to modify custody. *Id.*

Similarly, in *Nichols v. Beran*, 980 S.W.2d 342 (Mo.App. W.D.1998), one child had resided with the father for 14 months prior to the court's ruling on a motion to modify, pursuant to a temporary order entered by the court. *Id.* at 345. On appeal, this court rejected the notion that there was any impropriety in taking that fact into account in awarding custody to the father. *Id.* at 347. We stated that "the fact that the nominally non-custodial parent has in fact had custody of the child, while not determinative, is a very relevant consideration in making the ultimate determination whether the non-custodial parent has met the burden of showing a substantial ... change of circumstances which justifies a modification of custody." *Id.*

■ While *Baumgart* and *Nichols* involved periods of extended custody pursuant to temporary orders, they are consistent with the general proposition of Missouri case law that where and with whom children have been living between the time of a prior custody order and a modification hearing is a relevant factor and is entitled to considerable weight in determining "whether a substantial and continuing change of circumstances has occurred which justifies modification of the original custody order." *Baumgart*, 944 S.W.2d at 577. *See also McClain v. Chaffee*, 894 S.W.2d 719, 723 (Mo.App. W.D.1995); *Lee v. Lee*, 767 S.W.2d 373, 375 (Mo.App. W.D.1989). We discern no compelling reason why the same principal should not apply in a case such as this where Seth was in Father's custody for an extended period of time pursuant to a trial court judgment that was subsequently reversed on appeal. Although it may not seem fair to Mother that such period of custody can be considered in

determining whether a change of circumstances has occurred, the reality is that Seth lived with his Father during that time, and evidence relating to that period of custody and any disruption that would result if he was uprooted from that environment is exceedingly relevant in determining whether a change has occurred that might affect Seth's well-being.

The fact that Seth lived with his Father for over two years is a relevant consideration in determining whether there has been a significant change in Seth's circumstances since the previous custody determination. Point denied.

In her fourth point, Mother contends the trial court erred in modifying custody because her desire to move Seth to another school was not a significant change in circumstances. She argues that the school she sought to enroll Seth in was fully accredited and had appropriate facilities to deal with his special needs. Mother claims that the trial court improperly considered the potential change in schools as a significant change in circumstances because there was no evidence that Seth would be adversely affected by the change.

The trial court did make factual findings about Mother's desire to change Seth's school and credibility findings related to the experts that offered testimony comparing the two schools and clearly considered those facts in determining Seth's best interests. But the judgment does not reflect that this was a factor relied upon by the trial court in finding that a substantial change had occurred in the circumstances of Mother or Seth.

In her fifth point, Mother argues that the trial court improperly found a change in circumstances based upon changes in the circumstances of Father. Once again, the judgment does not indicate that the trial court relied on these findings in determining whether a substantial change in circumstances had occurred.

In all of her first five points, Mother attempts to segregate various factual findings made by the trial court and argue that each of them do not, in and of themselves, establish that a change of circumstances. However, Section 452.410 provides, in pertinent part:

[T]he court shall not modify a prior custody decree unless ... it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

Under this statutory language, the trial court must consider all of the facts that have arisen since the previous decree, along with any facts that were unknown to the court at the time of the previous decree, and determine whether all of those facts considered together constitute a change in the circumstances of the child and/or the custodial parent that would warrant a change in custody. *See Johnson v. Johnson*, 758 S.W.2d 721, 725 (Mo.App. W.D.1988).

The trial court's judgment clearly reflects that it considered all of the facts that had arisen since the previous judgment together in determining that a sufficient change in circumstances had occurred. Accordingly, we must consider all of the facts found by the trial court in determining whether the trial court erred in finding that a substantial change of circumstances had occurred that could warrant a change of custody.

The trial court found that Mother intentionally interfered with Father's visitation from August through November 1996, and as noted, *supra*, that

finding was supported by the evidence and was not against the weight of the evidence.[4] "A custodian's denial of the visitation rights of the noncustodial parent can be a change in circumstances that may justify modification of custody, especially where the evidence shows an unjustified and flagrant pattern of willful denial of visitation."[5] *Searcy v. Seedorff,* 8 S.W.3d 113, 118 (Mo. banc 1999); *See also In re McIntire,* 33 S.W.3d at 570 (quoting *Huffman,* 11 S.W.3d at 886). Under the evidence presented in this case, the trial court could reasonably have found that Mother displayed an unjustified and flagrant pattern of denying Father visitation from August through November 1996. This fact alone would likely be sufficient to constitute a change in the circumstances of Mother and Seth.

The trial court also considered the fact that Seth had spent over two years in Father's custody since the last custody decree. At the time of the previous decree, Seth and Father had spent very little time with each other due to Mother's surreptitious move to Texas. The fact that Seth subsequently lived with Father for a period of over two years, made friends and attended school in Father's neighborhood, and developed a close bond with Father could certainly be deemed a change in Seth's circumstances that may be strongly weighed in considering whether there has been a significant change in Seth's circumstances since the prior decree. *See Baumgart,* 944 S.W.2d at 576–77; *Nichols,* 980 S.W.2d at 347.

Furthermore, in addition to the factual findings challenged by Appellant, the trial court also found that since the previous judgment Mother had remarried, gotten divorced from her second husband, borne another child, and had her mother move in with her.[6] The trial court also noted that Mother had been involved with a man who later began stalking Mother. The trial court could have considered these events

---

4. Mother attempts to liken her case to that in *Searcy v. Seedorff,* 8 S.W.3d 113 (Mo. banc 1999), wherein the court found:

In this case, however, the guardian ad litem testified that the Seedorffs were directed by him and later the court to suspend visitation due to a pending division of family services investigation. The Seedorffs admit that Ms. Searcy was denied visitation with two of the children once because the children were ill, but Ms. Searcy was unable to recall with any specificity any other missed visitation periods. Such evidence failed to show a pattern of 'willful denial of visitation' on the part of the Seedorffs and does not provide a substantial change in circumstances justifying a modification of custody. *Id.* at 118. However, this case significantly differs from *Searcy* in that Mother was not acting on a court order or the instructions of the guardian ad litem, Father missed significantly more visitation than the parent in *Searcy,* and Mother went beyond the restrictions requested by DFS.

5. "The policy of this State is to encourage continued loving and caring relationships between divorced parents and their children

and to afford ample opportunity for close contact between both parents and their children." *Nichols v. Beran,* 980 S.W.2d 342, 347 (Mo.App. W.D.1998). "Accordingly, the rule has evolved that if one parent interferes with the decretal rights of the other, such interference constitutes a changed condition that may justify and require a modification of the custody provisions." *In re C.N.H.,* 998 S.W.2d 553, 557 (Mo.App. S.D.1999).

6. After Mother moved back to Kansas City, she lived with her grandmother for a while. Subsequently, in January 1997, Mother married Brian Manns and moved in with him. In April 1997, they separated and Mother moved back in with her grandmother. In August 1997, Mother moved into a two-bedroom duplex. On November 24, 1997, Mother gave birth to a child from her second marriage. At the time of trial, Mother's mother was living in the duplex with mother, Seth and the baby. From July through August 1999, Mother's sister and her four children also lived in the duplex.

in determining whether a significant change had occurred in the circumstances of Mother and Seth since the previous judgment.

Having reviewed the record and the factual findings of the trial court, we simply cannot say that the trial court erred in finding that a significant change had occurred in the circumstances of Seth and his Mother since the April 3, 1996 decree. "Even if no single factor discussed above established changed circumstances, the combination of the factors clearly does." *Johnson*, 758 S.W.2d at 725. Points one through five are denied.

We must next turn to Mother's sixth point which challenges the trial court's determination that a change in custody was in Seth's best interests. Mother asserts the trial court's determination that a change in custody was in Seth's best interests was not supported by substantial evidence and was against the weight of the evidence.

 Once the trial court determines that a significant change has occurred in the circumstances of the child or the child's custodian, the court must determine whether a modification of custody is necessary to serve the best interests of the child. *Nichols*, 980 S.W.2d at 346. "In deciding the best interest of a child in a custody modification proceeding, the court must consider the statutory factors of § 452.375.2, RSMo Cum.Supp.1998." *In re McIntire*, 33 S.W.3d at 572. Section 452.375.2 provides:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved . . . .;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

"We presume that the trial court reviewed all evidence and based its decision on the child's best interests.' " *In re McIntire*, 33 S.W.3d at 568 (quoting *K.J.B.*, 883 S.W.2d at 121–22).

 With regard to the first statutory factor, both parents expressed a strong desire to have custody of Seth placed with them. Accordingly, this factor does not favor either party.

In regard to the second statutory factor, the trial court found that father was the most willing to perform his functions as a parent to Seth. The court noted that Father had placed Seth in counseling to help with his behavioral problems and that Seth's behavioral problems had improved while in Father's custody. The court ob-

served that Father and his fiancé had been involved with Seth's teachers, therapists, counselors and principal and that Mother had little involvement in these matters until after the November 22, 1996 decree was reversed by this Court. The court further found that the placement of Seth with Father would better serve the purpose of providing Seth with a frequent, continuing and meaningful relationship with both parents. The court noted that Father had done a better job at making sure the non-custodial parent received all of the prescribed visitation than Mother had. The court found that Mother had engaged in a course of conduct that has interfered with Father's contact with his son. As noted, *supra*, the trial court's findings in this regard are supported by substantial evidence and are not against the weight of the evidence. This factor favors Father.

With regard to the third factor, the trial court noted that Seth had a good relationship with both Father and Mother. The court found that Seth had developed a "very strong relationship" with Father's fiancé. While Mother claims that her testimony established that Seth had a strong relationship with his half-brother also, the trial court found that testimony not to be credible.[7] This factor favors Father.

The trial court expressly found that Father was the parent more likely to allow the child frequent, continuing and meaningful contact with the other parent. Therefore, the fourth factor favors Father.

In addressing the fifth factor, the trial court noted that Seth had lived for over two years in Father's home and that his behavioral problems had improved while living there. The court also observed that Seth had spent his entire academic career at the school near Father's house and that

the school had a special education program that met his special needs. The court further noted that while living with Father he had not been required to move and that, if he had been living with Mother, Seth would have had to move four times in two years. The court also stated that Seth had a room of his own when he was staying with Father, and the court found that Father was the more stable parent, observing that Father had lived in the same place and been involved in the same relationship since the prior decree. Viewed together, the trial court's findings favor Father on this factor.

The sixth factor also favors Father. The trial court found that Seth had special physical, mental and behavioral problems that needed special attention in school and at home. The court found that Father had been better able to meet Seth's needs in this regard and that Seth's behavioral problems had improved while living with Father. No evidence was presented indicating that either Mother or Father had any type of mental or physical health problems that would affect Seth's well-being.

The trial court also found that Mother intended on moving in the relatively near future and that Father has no intention of relocating. Consequently, the seventh factor favors Father.

Finally, the record does not contain any evidence regarding Seth's desire to be placed with either parent. Accordingly, the final statutory factor does not favor either party.

Thus, the trial court made findings favoring Father with regard to six of the eight statutory factors in determining the Seth's best interests. The other two the

7. The court stated, "Petitioner testified that the child has a strong relationship with his half-brother, and was trying to teach him to

ride a bicycle, except that at the time this was testified to, Brittin was 21 months old."

court found to be neutral. Having reviewed the record, we find substantial evidence to support all of those findings.

While Mother attempts to argue that the overwhelming weight of the evidence reflects that Seth's best interests would be served through placing custody with her, she does so characterizing the evidence in the light most favorable to herself and basing the majority of her assertions on her own testimony. Our standard of review requires us to view the record and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment. *In re McIntire,* 33 S.W.3d at 568. Furthermore, the trial court was free to believe all, part or none of Mother's testimony and clearly found most of it not to be credible. *Id.*

Having reviewed the record, we find that the trial court's determination that a change in custody was in Seth's best interests was not against the overwhelming weight of the evidence. Point denied.

In sum, the trial court did not err in finding that a substantial change had occurred in the circumstances of Seth and Mother since the entry of the prior decree and that a change in custody was in Seth's best interest. These determinations were supported by sufficient evidence and were not against the weight of the evidence.

The judgment is affirmed.

All concur.