Kenneth Norman McCUBBIN,
Respondent,

v.

Kim M. TAYLOR, Appellant.

Nos. WD 56572, WD 56939.

Missouri Court of Appeals,
Western District.

Nov. 16, 1999.

**204**

Curtis G. Hanrahan, Jefferson City, for appellant.

Daniel Richard Green, Jefferson City, for respondent.

Before SPINDEN, P.J.,
LOWENSTEIN, J. and ULRICH, J.

ROBERT G. ULRICH, Judge.

Kim M. Taylor appeals the trial court's judgment of contempt for her failure to move the minor child born to the parties from Poplar Bluff back to Jefferson City, the city where the natural father, Kenneth McCubbin, resides. In this consolidated appeal, Ms. Taylor also appeals the trial

court's judgment of modification permanently transferring primary physical custody of her minor child to the natural father based upon her sua sponte intrastate relocation. The trial court's judgment of contempt and judgment of modification of child custody are reversed.

### Background

Kim M. Taylor ("Mother") and Kenneth Norman McCubbin ("Father") are the natural parents of a child born July 9, 1990. They never married and prior to August 1998 both resided in Jefferson City. On or about April 14, 1993, Father acknowledged paternity of the minor child born to Mother and agreed to pay child support for the child under an Administrative Consent Order. Thereafter, in 1995, Father filed a motion seeking joint custody and visitation with the minor child. The trial court awarded joint legal custody to both Father and Mother with Mother to have primary physical custody. A visitation schedule was mandated, child support to be paid by Father was increased, and Father was ordered to provide health insurance for the child.

Mother petitioned the court for permission to remove the child from the State of Missouri on March 20, 1998, to which Father objected, and filed a counter-motion for contempt. After a hearing on both motions, the parties withdrew their respective motions.

Subsequently, Mother mailed notification to Father that she and the minor child would be relocating to Poplar Bluff, Missouri, on August 18, 1998. Three days after her relocation, Mother and Father attempted a meeting at a half-way point between Poplar Bluff and Jefferson City in Potosi to permit Father's exercise of the next scheduled visitation. Although both parties testified to their respective efforts to meet and transfer physical custody of the child to permit Father's exercise of his visitation rights, visitation between child and father did not occur. Three days after the missed visitation, on August 24, 1998,

Father filed an application with the trial court for an order for Mother to show cause why she should not be held in contempt of court for denial of Father's joint custody and visitation rights by Mother's sua sponte move to Poplar Bluff. In addition to the application for the show cause order, Father also filed a motion to modify the amended judgment entry seeking physical custody of the minor child, child support, and attorney's fees.

The trial court issued its order directing Mother to appear and show cause why she should not be held in contempt of court for "failing and refusing to grant Petitioner his rights of joint custody and visitation." At the show cause hearing, Mother testified that prior to August 15, 1998, she was employed at Wal–Mart in Jefferson City as a part-time employee. In August, she was offered a position and transfer to the Poplar Bluff Wal–Mart store at full-time wages and benefits. Father testified that he was denied visitation on the single occasion of August 21, 1998, three days after Mother's move to Poplar Bluff, but he testified to no other specific denial of visitation except a previous Christmas visit. Father acknowledged that he had not taken his allotted two-week summer visitation for the past three summers due to his busy work schedule. He also acknowledged that his complaint about denial of joint custody and visitation rights accrued subsequent to Mother's move to Poplar Bluff.

After the show cause hearing, the trial court entered an order on September 16, 1998, transferring physical custody of the minor child, but staying execution of the order for thirty days to enable Mother to move back to Jefferson City. When Mother failed to move back to Jefferson City, the trial court issued its final judgment of contempt on October 22, 1998, lifting the previously entered stay and ordered the following sanctions:

[a]s sanctions for her contempt, this Court orders physical custody of the minor child, ..., transferred to Petitioner, subject to the Respondent's rights of

reasonable visitation, until such time as Respondent purges herself of contempt by re-locating to Jefferson City, Mo. The court further finds that such transfer is in the best interest of the child.

Thereafter, a hearing was held on the motion to modify custody filed by Father, and the trial court issued its judgment of modification, removing the child from the physical custody of Mother and placing the child in the permanent physical custody of Father. In the judgment entry entered on February 18, 1999, the trial court set forth the following rationale for modifying custody: "Taylor has willfully and contemptuously denied Petitioner his rights of Joint Legal Custody as to the minor child, ... and denied Petitioner regular and meaningful contact with the minor child by *sua sponte* moving the minor child from her former residence in Jefferson City, Missouri, which is also the city in which Petitioner resides." This appeal followed.

### Standard of Review

■ The standard of review is stated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court will be affirmed unless it misstates the law, misapplies the law, substantial evidence does not support the judgment, or the judgment is against the weight of the evidence. *Id.* However, greater deference is accorded to the determination of a trial court on custody matters than in other cases. *Mills v. Mills*, 939 S.W.2d 72, 75 (Mo.App. W.D. 1997).

### Trial Court Jurisdiction

■ Mother contends that the trial court lacked subject matter jurisdiction to enter either the judgment of contempt against her or to transfer custody of the child because the trial court cannot modify a consent administrative order for child support entered by the Director of the Division of Child Support Enforcement. This consent administrative order was entered pursuant to section 454.485,[1] which

permits the Director of the Division of Child Support Enforcement to "enter an order establishing paternity of a child in the course of a support proceeding." Mother argues that because the statute authorizing the administrative order only authorizes orders for child support, the court did not have subject matter jurisdiction to make the custody and visitation determinations requested by Father's original motion for joint custody and visitation.

Section 454.490.1, RSMo Cum.Supp.1998 provides that:

> A true copy of any order entered by the director pursuant to sections 454.460 to 454.997, ... may be filed with the clerk of the circuit court in the county in which the judgment of ... paternity has been entered, or if no such judgment was entered, in the county where either the parent or the dependant child resides or where the support order was filed. Upon filing, the clerk shall enter the order in the judgment docket. Upon docketing, the order shall have all the force, effect, and attributes of a docketed order or decree of the circuit court, ....

As the administrative order for child support has all the "force, effect, and attributes" of a circuit court order, the trial court had subject matter jurisdiction to modify the administrative order, as the administrative order effectively became the court's order upon being docketed with the trial court. In this case, the Director of the Division of Child Support Enforcement filed the certification of the administrative order on April 26, 1993. Therefore, the trial court had jurisdiction over the docketed administrative order as a judgment of the court.

### Child Custody Modification

Next, Mother contends that the trial court erred in granting Father's motion to modify, permanently transferring physical custody of the minor child, because neither

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

a substantial and continuing change in the circumstances of the child or her custodian was demonstrated, nor was sufficient evidence offered to support the court's finding that transfer of physical custody to Father was in the best interest of the child.

■ In considering the best interest of the child on motions for change of custody, the trial court is vested with wide discretion. *Nichols v. Beran*, 980 S.W.2d 342, 345 (Mo.App. W.D.1998). The reviewing court should defer to the findings of the trial court unless they are in conflict with a clear preponderance of the evidence and they disclose an abuse of discretion. *Id.*

Under section 452.410.1, a court may not modify a prior custody decree unless it finds, on the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that (1) a change has occurred in the circumstances of the child or the child's custodian and (2) that the modification is necessary to serve the best interests of the child.

■ The change of circumstances must be significant before a child custody decree may be modified. *Nichols*, 980 S.W.2d at 346. An evidentiary basis to support a finding of a change of circumstances must be demonstrated which gives the trial court jurisdiction to consider making a change of custody. *Alt v. Alt*, 896 S.W.2d 519, 521 (Mo.App. W.D.1995).

■ Furthermore, once custody has been originally adjudicated, a presumption exists that the parent with custody remains suitable. *Basler v. Basler*, 892 S.W.2d 749, 750 (Mo.App. E.D.1994). The parent requesting the change of custody bears the burden of proving that the change in circumstances is so significant as to directly affect the welfare of the child and warrant a change of custody. *Id.*

## A.   Change in Circumstances

■ The trial court determined that Mother and minor child's change of residence to Poplar Bluff precluded Father from participating in joint custody of the child and constituted a substantial change in circumstances warranting transferring physical custody of the child from Mother to Father.

■ Although section 452.411, RSMo Cum.Supp.1998, identifies a change of residence from one state to another as a change of circumstances which could support a court's modification of a prior custody determination, the statute does not provide that a mere change from one Missouri county to another, without more, warrants the same or a similar result. *Basler*, 892 S.W.2d at 751. The newly enacted child relocation notification statute, contained in section 452.377.12, RSMo Cum.Supp.1998, provides that "violation of the provisions of this section or a court order under this section may be deemed a change of circumstances under section 452.410, allowing the court to modify the prior custody decree." The relocation of the child by Mother occurred prior to August 28, 1998, the effective date of section 452.377, RSMo Cum.Supp.1998. Under the rule of statutory construction, statutory provisions that are substantive are generally presumed to operate prospectively, unless the legislative intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 872 (Mo. banc 1993). Since section 452.377, RSMo Cum.Supp.1998, affects the substantive rights of the parties and contains no express language indicating retroactive application, the newly enacted relocation notification statute is inapplicable to this case as the relocation of the child occurred before the statute's effective date.

The record fails to support the trial court's finding that Mother's "*sua sponte* moving the minor child from her former residence in Jefferson City, Missouri" was

significant enough to constitute a change in circumstances pursuant to section 452.410.1. In the Judgment of Modification of Amended Judgment Entry, the trial court found that Mother "has willfully and contemptuously denied [Father] his rights of Joint Legal Custody as to the minor child, ... and denied [Father] regular and meaningful contact with the minor child by *sua sponte* moving the minor child from her former residence in Jefferson City, Missouri, which is also the city in which [Father] resides." The record reflects that the trial court's determination that a substantial change of circumstances has occurred was based on the sole fact that Mother moved with the minor child from Jefferson City to Poplar Bluff, a distance of approximately 250 miles. The record further indicates that although Father missed a single visitation weekend with his daughter after Mother moved to Poplar Bluff, Mother testified to her effort to comply with the visitation schedule, driving the child to Potosi and ultimately to Jefferson City, although the parties did not effect rendezvous. No evidence was presented to demonstrate that the distance between Poplar Bluff and Jefferson City, in this age of high speed travel and common use of communication technology, denies the parties the ability to comply with the visitation schedule, or to discuss the child's needs and resolution of those needs as effectively as they could if both parents were present in the same city.

Additionally, Father did not meet his burden of proving that the change in circumstances presented, Mother's move to Poplar Bluff, was sufficiently significant as to directly affect the welfare of the child by substantially disturbing the father/daughter relationship, and thereby interfering with Father's joint custody and warranting a change in custody. No evidence was presented that the nature of Father's involvement in the child's life prior to the move required continuing close physical proximity in order to facilitate the existing relationship. Nothing in the record indicates that Father's present level of participation and involvement in the child's life would be diminished by the child living in Poplar Bluff rather than in Jefferson City. Therefore, Father did not meet his burden of showing the move constituted a significant change in circumstances. As insufficient evidence exists to support the trial court's finding that Mother's intrastate move, by itself, constituted a substantial change of circumstances, the trial court erred in modifying the prior custody judgment.

## B. Best interest of the Child

■ Even had the substantial change of circumstances element of section 452.410.1 been satisfied in this case, a court is only permitted to modify a prior custody judgment if the "modification is necessary to serve the best interests of the child." § 452.410.1, RSMo 1994.

■ When considering the best interest of the child, a court must consider all relevant factors that would affect the child. *Nichols*, 980 S.W.2d at 346. Section 452.375.2 sets forth the relevant factors which shall be considered by the courts in a determination of custody in accordance with the bests interest of the child:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interest;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of child as to the child's custodian.

§ 452.375.2, RSMo Cum.Supp.1998.

■ The best interests of a child are facilitated by continued interrelationships with both parents. *Jones v. Jones*, 903 S.W.2d 277, 282 (Mo.App. W.D.1995). This is not to say that the right of the custodial parent to change the place of residence is completely subordinate to this consideration. *Id.* In our highly mobile society, inflexibly confining a custodial parent to a fixed geographic area simply to be proximate to the non-custodial parent is unrealistic, if removal to another area for reasons such as change of employment does not significantly interfere with the non-custodial parent's participation in the joint legal custody and is not inconsistent with the best interests of the child. *Id.*

■ The award of custody may not be used as a reward or punishment of either parent, but must be based upon the best interest of the child. *Petty v. Petty*, 760 S.W.2d 555, 557 (Mo.App. W.D.1988). Indeed, the child's interests and welfare predominate over all other considerations in a custody dispute. *M.D.R. v. P.K.R.*, 716 S.W.2d 866, 868 (Mo.App. W.D.1986).

The evidence does not support the trial court's finding that transfer of custody from the parent with whom the child had resided her entire life of eight years to the child's natural father was in the child's best interest. Until the court's abrupt transfer of primary physical custody to Father, the child had resided with Mother since birth with only short scheduled visits with her father. Two years earlier, the court had awarded Mother primary physi-

cal custody of the child. The record is devoid of evidence supporting why the custody transfer would be in the best interest of the child. The record does not reflect that the court ever considered the child counselor's report which recommended leaving the child with her mother, the child's interaction with her sibling, or her adjustment to home, school and community, or the child's wishes. Instead, the court seems to focus on evidence supporting why the custody modification would be in the best interest of the non-custodial parent by not having to travel as far to exercise visitation rights.

■ Another relevant factor used by the court to determine the best interest of the child is "the intention of either parent to relocate the principal residence of the child." § 452.375.2(7), RSMo Cum.Supp. 1998. The intent to relocate factor is not applicable in this case as at the time of the court's determination of what custody arrangement was in the best interests of the child, Mother was already residing in Poplar Bluff.

■ Section 452.375.2(4), RSMo Cum. Supp.1998, also includes the "friendly parent" factor as one of several for consideration, where appropriate, in determining custody of a minor child. Father identified the single missed visit with his child since Mother's move to Poplar Bluff, and he could remember only one additional missed visit before the move. Father, however, had failed to exercise his two-week vacation visitation rights with the child for the previous three summers due to his busy work schedule.

Even given the wide deference given to the trial court, the court's finding that the transfer was in the best interest of the child conflicts with a clear preponderance of the evidence; therefore, the trial court erred in modifying its prior custody judgment.

**Civil Contempt**

■ The third issue on appeal is whether the trial court erred in issuing its

"Judgment of Contempt" for Mother's failure to move her residence back to Jefferson City after she moved to Poplar Bluff with the minor child to obtain full-time employment opportunities.

■■■■■ A civil contempt action is a remedial action, coercive in nature, whose purpose is to enforce a remedy ordered in the previous adjudication of the parties claims. *Wisdom v. Wisdom,* 689 S.W.2d 82, 86 (Mo.App. W.D.1985). In like manner, the sanctions which follow a judgment of civil contempt are meant to enforce compliance and not as a penalty, as in criminal contempt. *Id.* at 86–87. Contempt for failure to abide by a court order providing for child visitation or temporary custody will "lie if (1) there was an actual violation of the court's order and either (2) the alleged contemner was able to comply with the court order or (3) the alleged contemner 'intentionally and contumaciously placed himself in a position so that he could not comply with the court's orders.'" *A.G. v. R.M.D.,* 730 S.W.2d 543, 546 (Mo. banc 1987).

The trial court's Judgment of Contempt entered on October 22, 1998, found Mother "in contempt of this Court's Order of February 27, 1996[2] in that she willfully and contemptuously denied Petitioner his rights of Joint Legal Custody as to the minor child.... Respondent has additionally contemptuously denied Petitioner regular and meaningful contact with the minor child by *sua sponte* moving the minor child from her former residence in Jefferson City, Missouri, which is also the city in which Petitioner resides." The court ordered physical custody of the minor child, who had resided with Mother from birth, transferred to Father. Finally, the court's order stated that Mother could purge herself of contempt and the consequence of the court's order by reestablishing her residence in Jefferson City.

The court's Amended Judgment Entry entered February 21, 1996, in effect when Mother moved her residence to Poplar Bluff, did not stipulate that Mother could not relocate with the minor child. The only relevant provisions of the Amended Judgment Entry to the contempt judgment were as follows:

> ... the parties shall use their best efforts to foster the respect, love and affection of the minor child toward each parent.... Each shall cooperate in order that the child shall have regular and frequent contact with both to the end that there shall be affection and respect between the child and the parents.

Mother was not specifically prohibited by any court order or any statute effective at the time of her relocation from moving to another part of the state with the minor child. Mother's intrastate relocation from Jefferson City to Poplar Bluff is not sufficient, without more, to establish contempt. The trial court erred in finding Mother in contempt for relocating to Poplar Bluff and for not reestablishing her residence in Jefferson City.

The trial court's judgment of contempt and its judgment modifying custody are reversed and the trial court's Amended Judgment Entry of February 21, 1996 is reinstated. Custody of the child is to be transferred back to Mother forthwith, unless the parties agree that the best interest of the child, considering the custody transfer will necessitate changing schools during the school semester, is better effected following the conclusion of the academic semester.

All concur.

---

2.  As there is no record of a February 27, 1996 Amended Judgment Entry, this court assumes the trial court was referring to the February 21, 1996 Amended Judgment Entry.