In re the Matter of Patience Irene McINTIRE, a Minor, Personally and by her Next Friend, Shawn A. McIntire.

Shawn A. McIntire, Appellant,

v.

Jennifer Hake (Gerlt), Respondent.

No. WD 57820.

Missouri Court of Appeals,
Western District.

Oct. 10, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 2000.

Application for Transfer Denied
Jan. 23, 2001.

John W. Dennis, Jr., Deborah J. Blakely, Independence, for appellant.

Brian K. Francka, Tobias A. Teeter, Jefferson City, for respondent.

W. Steven Rives, Lake Ozark, Guardian ad litem.

Before SPINDEN, C.J., and HOWARD and HOLLIGER, JJ.

HOWARD, Judge.

Shawn A. McIntire appeals from the trial court's judgment modifying the custody order with respect to Patience McIntire, his minor child, by transferring primary physical custody of the child to her mother, Jennifer Hake. McIntire contends that the trial court erred in 1) modifying the custody decree based on his relocation to Independence, Missouri; 2) finding that he alienated Patience from Hake, interfered with Hake's visitation rights, and inhibited Hake's relationship with Patience; 3) holding that custody should be modified based on drug use by him and his wife; 4) finding that his failure to advise Hake of his address and phone number constituted a change in circumstances sufficient to modify custody; 5) finding that his failure to include Hake in decision-making responsibilities warranted a modification of custody; and 6) determining that a substantial change of circumstances sufficient to warrant a transfer of custody had occurred, and finding that the transfer of custody would be in Patience's best interests.

We affirm.

## Facts

Patience Irene McIntire was born on September 26, 1993. Her parents, Shawn McIntire and Jennifer Hake, have never been married. At the time of Patience's birth, both McIntire and Hake lived with McIntire's parents in Versailles, Missouri. Hake eventually moved out of McIntire's parents' home. She now lives in Jefferson City, Missouri.

On June 7, 1996, McIntire filed a petition for determination of father-child relationship and order of child custody. On September 5, 1996, the trial court entered a judgment awarding McIntire and Hake joint legal custody of Patience, with McIntire being awarded primary physical custody.

On April 20, 1999, Hake filed an amended motion to modify seeking a transfer of legal and physical custody to her, alleging that a substantial and continuing change had occurred since the original custody order, in that 1) McIntire moved Patience to Kansas City without prior approval from her or the court; 2) McIntire failed to keep her informed as to Patience's activities, including school, daycare, church, and medical procedures; 3) McIntire failed to provide information concerning health insurance for Patience to her; 4) she was able and willing to care for Patience, and was capable of providing a stable and lov-

ing environment for Patience; and 5) she believed it was in the best interests of Patience to reside with her, subject to McIntire's right of visitation.

On July 28, 1999, the trial court entered its modified judgment, in which it found that a substantial and continuing change of circumstance warranted a modification of custody. The trial court found that the following changes warranted a modification of the original judgment: 1) McIntire has moved nearly 120 miles from Morgan County, Missouri to Independence, Jackson County, Missouri; 2) Since the original judgment, McIntire has alienated the minor child from Hake and has interfered with Hake's visitation rights; 3) McIntire has sought to inhibit the minor child's relationship with Hake; 4) McIntire has willfully refused to inform Hake of his address and phone number; 5) McIntire has failed to include Hake in the decision-making responsibilities of rearing the minor child; and 6) McIntire and his current wife have admittedly used illegal drugs, including marijuana, since the date of the judgment. The trial court did not modify the original joint legal custody arrangement, but transferred primary physical custody of Patience to Hake. This appeal follows.

## Standard of Review

Our standard of review in a custody modification case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Jones v. Jones*, 10 S.W.3d 528, 532 (Mo.App. W.D.1999). We will affirm the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

In assessing the sufficiency of the evidence, we examine the evidence and its inferences in the light most favorable to the trial court's order. We defer to the trial court's assessment of witnesses' credibility and accept the trial court's resolution of conflicting evidence. We presume that the trial court reviewed all evidence and based its decision on the child's best interests.

*K.J.B. v. C.A.B.*, 883 S.W.2d 117, 121–22 (Mo.App. W.D.1994) (citations omitted). "The trial court's determination in child custody proceedings is given greater deference than in any other type of case." *Brandow v. Brandow*, 18 S.W.3d 584, 587 (Mo.App. W.D.2000).

## Argument

Section 452.410.1 [1] provides, in relevant part, as follows:

Except as provided in subsection 2 of this section, the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

This court has previously stated that "[u]nder this subsection, before a court can change physical custody of a minor child as being in his or her best interests, it must first determine that there has been a substantial and continuing change of circumstances of the child or custodian." *Haus–Gillespie v. Gillespie*, 998 S.W.2d 842, 846 (Mo.App. W.D.1999); *see also Johnson v. Lewis*, 12 S.W.3d 379, 383 (Mo.App. W.D. 2000); *Landry v. Miller*, 998 S.W.2d 837, 840 (Mo.App. W.D.1999). This standard has also been set forth in the southern and eastern districts. *See Tilley v. Tilley*, 968 S.W.2d 208, 212 (Mo.App. S.D.1998); *Maher v. Maher*, 951 S.W.2d 669, 672 (Mo.App. E.D.1997). However, the southern district of this court, in *In re C.N.H*, 998 S.W.2d 553, 556–57 (Mo.App. S.D.1999), recently stated that "a finding of a '*substantial and continuing* change' in circumstances is not

1. All statutory references are to RSMo 1994, unless otherwise indicated.

a prerequisite to the modification of custody decrees. The 'substantial and continuing change' language is part of § 452.370, which concerns a modification of *support.* 'That particular section ... [is] not controlling on a modification [of] *custody.*' " (Citations omitted.) *See also Searcy v. Seedorff,* 8 S.W.3d 113, 117 (Mo. banc 2000) (stating that a change in circumstances warranting custody modification must be substantial, but not stating that it must be continuing).

█ In light of the language of § 452.410.1 and logical considerations,[2] we find that a change in circumstances of the child or custodian warranting custody modification must be "substantial" or "significant," but it need not necessarily be continuing. To the extent that previous cases hold otherwise, they should no longer be followed in this district.[3]

## Point I

McIntire's first point on appeal is that the trial court erred in modifying the custody decree based on McIntire's relocation to Independence, Missouri, because the modification is not supported by substantial evidence that the relocation interfered with Hake's visitation with Patience or that the move had any adverse effects on Patience or created an unstable lifestyle for her.

█ Following the original custody order, McIntire relocated with Patience to Independence, Missouri, in October 1996.[4] A residential change of the custodial parent to a distant location away from the noncustodial parent does not by itself establish that modification of the prior custody decree is appropriate. *Rice v. Shepard,*

877 S.W.2d 229, 231 (Mo.App. W.D.1994); *see also McCubbin v. Taylor,* 5 S.W.3d 202, 208 (Mo.App. W.D.1999) (finding that mother's move with minor child from Jefferson City to Poplar Bluff, a distance of 250 miles, and subsequent single missed visitation weekend did not warrant change of custody where there was no evidence that the move affected the parties' ability to comply with the visitation schedule, or to discuss the child's needs and resolution of those needs as effectively as they could if both parents were present in the same city, nor that the move directly affected the welfare of the child by substantially disturbing the father/daughter relationship); *Reeves–Weible v. Reeves,* 995 S.W.2d 50, 61 (Mo.App. W.D.1999) (finding that modification of custody was not warranted where change of residence of children resulted in them living an additional forty-nine miles from the other parent's residence and interfered with Wednesday night visitation, because the move did not significantly diminish the time the parent spent with the children, nor did it prevent the parent from having a meaningful relationship with the children); *Basler v. Basler,* 892 S.W.2d 749, 750–51 (Mo.App. E.D. 1994) (finding that mother's relocation from southeast Missouri to central Missouri was not a change of circumstances sufficient to warrant a change of custody, even though the original custody decree included the provision whereby a move by either party outside a three-county area could justify a change of custody).

█ Hake does not argue that McIntire's relocation, by itself, warrants a change of custody. Rather, Hake argues that the relocation, together with McIn-

2. For example, a parent murdering one child would not be a "continuing" change, but it would certainly warrant a modification of custody of another child.

3. This opinion has been reviewed and approved by order of the court en banc.

4. We note that McIntire did not violate § 452.377 by relocating with Patience. Un-

der the version of the statute that was in effect when McIntire moved to Independence, the custodial parent was required to receive the court's permission to relocate the minor child's principal residence only if the relocation was going to be outside of Missouri. *See McCubbin v. Taylor,* 5 S.W.3d 202, 207 (Mo. App. W.D.1999).

tire's refusal to provide her with information about his whereabouts, provided substantial evidence that McIntire attempted to alienate Patience from her. While properly considered by the court, we find that, by itself, McIntire's relocation did not justify the trial court's modification of custody.

## Point II

McIntire's second point on appeal is that the trial court's finding that he alienated Patience from Hake, interfered with Hake's visitation rights, and inhibited Hake's relationship with Patience is against the weight of the evidence and is not supported by substantial evidence in that the evidence at trial demonstrated that Hake has missed only one visitation period since the September 1996 order and that McIntire wants Patience to see Hake and has encouraged Hake to visit Patience.

We first address the interference with Hake's visitation rights. "[A] custodial parent's interference with the visitation rights of the non-custodial parent can create a change in circumstances that may justify modification of custody. This is especially true where the evidence shows an unjustified and flagrant pattern of willful denial of visitation." *Huffman v. Huffman,* 11 S.W.3d 882, 886 (Mo.App. W.D. 2000). The evidence in this case indicates that Hake missed only one visit with Patience since the entry of the 1996 custody order, during a weekend when McIntire was moving. We find that one missed visit, by itself, is not sufficient to constitute a change of circumstances warranting a custody modification.

We next discuss the trial court's findings that McIntire alienated Patience from Hake and interfered with the relationship between Patience and Hake. "[F]acts showing an attempt by one parent to alienate a child from the other parent can form the basis for modification of custody." *Nichols v. Beran,* 980 S.W.2d 342, 347 (Mo.App. W.D.1998). Hake testified

that McIntire never calls to let her know how Patience is doing. She also testified that McIntire did not let her know about Patience's graduation from preschool in time for her to be able to take off work to attend.

At trial, Judge Scott stated that she believed McIntire and his family attempted to alienate Patience from Hake. She stated that this attempted alienation was not only a pattern, but a "conspiracy." Judge Scott seemed to be particularly bothered by McIntire's and his witnesses' references to Patience "having" to visit with Hake. Judge Scott further stated that she believed McIntire either did not understand joint custody, or he did not intend to follow the joint custody plan, because he did not keep Hake informed about Patience.

As further discussed in Point V, considering the evidence in the light most favorable to the trial court's decision, as well as the deferential standard of review, we find that there was sufficient evidence for the trial court to find that McIntire alienated Patience from Hake, and that he interfered with the relationship between Patience and Hake. "In a joint custody situation, breakdown of parental communication and cooperation is sufficient, in and of itself, to constitute a change in circumstances, which may afford the basis for modifying a prior decree." *Hollins v. Hollins,* 13 S.W.3d 669, 672 (Mo.App. E.D. 2000). Therefore, we find that the trial court did not err in modifying the custody decree on the basis that McIntire alienated Patience from Hake through his lack of communication with her.

## Point III

McIntire's third point on appeal is that the trial court erred in holding that custody should be modified based on drug use by him and his wife, because such holding was not supported by competent and substantial evidence in that there was no evidence of any drug use within two years of the modification, nor was there any evi-

dence that past drug use adversely affected Patience.

■■■ The trial court found that McIntire and his current wife admitted using drugs since the original custody judgment. McIntire testified that he and his wife used to smoke marijuana, but that he quit two to three years ago, and his wife quit two years ago. While the court properly considered this evidence, there is no indication the court solely relied on it or gave it undue consideration.

## Point IV

McIntire's fourth point on appeal is that the trial court erred in finding that his failure to advise Hake of his address and phone number once he moved to the Kansas City area constituted a change in circumstances sufficient to modify custody because this conduct does not rise to the level of egregious conduct necessary to warrant a modification of custody, does not constitute a change of circumstances of a continuing nature, and is not supported by substantial evidence.

■■■ The original custody order required that McIntire and Hake keep each other informed as to their place of residence and their telephone number. At trial there was conflicting testimony about whether Hake was informed of his and Patience's address and phone number after he moved to Independence. However, Hake testified that she did not miss any visits with Patience because of McIntire's alleged failure to provide her with his new address and phone number, and that she was in contact with McIntire's mother during that time. Again, we find that this factor, by itself, did not constitute a change of circumstances warranting a modification of custody in this particular case.

## Point V

McIntire's fifth point on appeal is that the trial court erred in finding that his failure to include Hake in decision-making responsibilities warranted a modification of custody because this finding is not supported by substantial evidence and is against the weight of the evidence, in that he denied that he failed to include Hake in the decision-making responsibilities of rearing Patience.

This point is related to Point II in that both points concern the lack of communication between McIntire and Hake concerning Patience.

The original custody decree provided as follows:

In connection with their exercise of joint legal custody, Petitioner and Respondent shall share the decision-making rights, responsibilities and authority relating to the health, education and welfare of the children and confer with one another in the exercise of decision-making rights, responsibilities and authority. Petitioner and Respondent shall have an equal voice on issues regarding the children's training, education and rearing, including the choice or change of school, college, camp or other comparable summer activity, special tutoring, music, art, dance and other cultural lessons, psychological or psychiatric treatment or counseling, doctors, surgeons, religion and all other material decisions affecting the health, education and welfare of the children.

Hake testified that McIntire did not give her any say about where Patience attended school, and she objected to where he was sending her to school. She testified that McIntire did not tell her where Patience was attending church, and that McIntire had not kept her informed about Patience's health or given her any insurance information concerning Patience.

■■■ Concerning Hake's allegation that McIntire did not give her any say where Patience attended school, the evidence was that Hake told McIntire that she wanted him to send Patience to the best school possible, and McIntire testified that he only had enough money to send her to

Head Start. McIntire ended up sending Patience to Head Start. Considering that when parents disagree, the decision must ultimately be made by one parent, we find that McIntire's decision to send Patience to Head Start was not a sufficient basis for the trial court to modify custody. *Huffman*, 11 S.W.3d at 887 (finding that mother's failure to include father in decisions to send child to private school, get braces for child, and hospitalize child were not efforts to alienate father and did not warrant modification of custody where there was no evidence that decisions would have been different if the father had been included in the decision-making process).

However, taken in the light most favorable to the trial court's decision, there was evidence that McIntire frequently failed to provide Hake with information concerning Patience, including school activities and insurance information. Obviously in order for Hake to be included in decision-making responsibilities concerning Patience, she must be kept informed as to what is going on in Patience's life. We find that there was sufficient evidence for the trial court to find that McIntire's failure to keep Hake informed concerning Patience, thereby preventing her from participating in decisions about Patience, constituted a change of circumstances justifying a modification of custody.

**5.** That section provides as follows:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

## Point VI

McIntire's sixth point on appeal is that the trial court erred in determining that a substantial change of circumstances sufficient to warrant a transfer of custody had occurred in that none of the factors enumerated by the trial court were significant enough to warrant the transfer of custody, nor would Patience substantially benefit from the transfer. McIntire also contends that the trial court further erred in finding that the transfer of custody would be in Patience's best interests.

■ We have already found that there was sufficient evidence for the trial court to decide that McIntire attempted to alienate the child from Hake, inhibited the mother-child relationship, and failed to properly involve Hake in the decision-making responsibilities of rearing the child. We found that these changes were substantial and significant so as to warrant the transfer of custody.

■ We next address McIntire's claim that the trial court erred in finding that the transfer of custody would be in Patience's best interests. In deciding the best interests of a child in a custody modification proceeding, the court must consider the statutory factors of § 452.375.2 RSMo Cum.Supp.1998.[5] *Reeves–Weible*, 995 S.W.2d at 62–63.

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

In considering the best interest of the child on motions for change of custody, the trial court is vested with wide discretion. The reviewing court should defer to the findings of the trial court unless they are in conflict with a clear preponderance of the evidence and they disclose an abuse of discretion.

*McCubbin,* 5 S.W.3d at 207 (citations omitted). The trial court's findings of fact and conclusions of law indicate that it did consider the factors listed in § 452.375 in deciding that a modification was necessary to serve Patience's best interests. We find no abuse of discretion by the trial court in determining that a modification of custody was in Patience's best interests.

The judgment of the trial court is affirmed.

SPINDEN, C.J., and HOLLIGER, J., concur.