Richard Paul RILEY, Respondent,

v.

Mikki Annette CAMPBELL, Appellant.

No. WD 60948.

Missouri Court of Appeals,
Western District.

Oct. 15, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 26, 2002.

Seth D. Shumaker, Kirksville, MO, for
Appellant.

James M. Garrett, Unionville, MO, for
Respondent.

Before HAROLD L. LOWENSTEIN,
P.J., JAMES M. SMART, JR., and
THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Ms. Mikki Annette Campbell appeals
from the trial court's judgment modifying
custody of two of her children. For the
reasons explained below, we reverse and
remand.

## I. Factual and Procedural Background

Mr. Richard Paul Riley and his former
wife, Ms. Campbell, have three children:
Justin, age 10; Emily, age 11; and Joseph,
age 13. The trial court originally awarded

the parties joint legal custody of the three children. The trial court awarded primary physical custody of Joseph to Mr. Riley. The court awarded primary physical custody of Justin and Emily to Ms. Campbell. The record does not explain why the trial court originally divided primary physical custody in that manner. However, the record suggests that Ms. Campbell and her son Joseph did not get along well at the time of the original custody determination. In fact, the record reveals that Joseph lived with his father when the parties separated before divorcing.

Since the parents divorced in 1999, the relationship between Ms. Campbell and her son, Joseph, deteriorated further. In May 2001, Mr. Riley moved to modify custody of Justin and Emily, alleging, among other things, that the dysfunctional relationship between Ms. Campbell and Joseph was adversely affecting the relationship among all three children while they were together in Ms. Campbell's home.

In granting Mr. Riley's motion to modify custody of Justin and Emily, the trial court found that Ms. Campbell considers Joseph "as something less than her son," that the children "are growing apart," that Joseph and Emily "expressed a desire that they have a closer relationship," and that Mr. Riley "generally supports more activities of the children and attends more of their activities, as well as school and parent[-]teachers meetings." The trial court also determined that the children's best interests required reunification in one household and that they could only get along together in Mr. Riley's household.

Ms. Campbell raises two points on appeal. In her first point, she contends that the trial court erred in overruling her motion for directed verdict at the close of Mr. Riley's evidence because Mr. Riley failed to show the requisite substantial change in circumstances since the original custody ruling. In her second point, she contends that the trial court erred in determining that the children's best interests required modification because the ruling was against the weight of the evidence. Because we find that the first point requires reversal, it is not necessary to address the second point about whether the modification of custody was in the best interests of the children.

## II. Standard of Review

■ We review custody modification decisions according to the standard announced in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *In re McIntire*, 33 S.W.3d 565, 568 (Mo.App. W.D.2000). We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

■ Accordingly, we examine the evidence and its inferences "in the light most favorable to the trial court's order." *Id.* We defer to the trial court's assessment of witness credibility and accept its resolution of conflicting evidence. We presume that it reviewed all of the evidence and decided the matter in the children's best interests. *Id.*

## III. Legal Analysis

### Evidence Of Substantially Changed Circumstances

■ To justify a change in Justin and Emily's custody in this case, the trial court first had to find a substantial change in either their circumstances or in Ms. Campbell's circumstances since the last custody determination.[1] *See id.* at 569. As the

---

1. Section 452.410 codifies the requirements for child custody modification. Unless other-

parent requesting modification, Mr. Riley carried the burden of proving such substantially changed circumstances here. *Weaver v. Kelling,* 53 S.W.3d 610, 613 (Mo.App. W.D.2001). Absent evidence to the contrary, the trial court should have presumed that Ms. Campbell remained a suitable custodial parent for Justin and Emily. *Smith v. Smith,* 75 S.W.3d 815, 822 (Mo.App. W.D.2002). As our courts have said before:

> There is much value in allowing children to remain with the parent who has custody as opposed to uprooting them and transporting them to a new home. Children should not be moved from one environment to another upon slight changes of status of the parents. We will only do so where the changes are such that the welfare of the child requires that custody should be transferred.

*Humphrey v. Humphrey,* 888 S.W.2d 342, 345 (Mo.App. E.D.1994) (citations omitted). *See also Reeves–Weible v. Reeves,* 995 S.W.2d 50, 57 (Mo.App. W.D.1999) (likewise recognizing that courts should not freely uproot children and declaring that "[n]ot every change in the life of a child or his or her custodian is enough to trigger a modification of custody"). Only if the circumstances had substantially changed should the trial court have considered whether modification was in the children's best interests. *See Guier v. Guier,* 918 S.W.2d 940, 947 (Mo.App. W.D.1996).

After thoroughly reviewing the record, we find that Mr. Riley did not carry his burden and that the evidence does not justify a finding of substantially changed circumstances here. Setting aside the evidence bearing solely on changes in Joseph's circumstances [2]—evidence that does not bear on the changed circumstances of those whose custody would be affected (Justin and Emily) or their custodian (Ms. Campbell)—the evidence relating to Justin, Emily, and Ms. Campbell boils down to the following, when viewed in the light most favorable to the judgment.

Since the parents' divorce, Joseph and his mother repeatedly find themselves at odds during visits in Ms. Campbell's home. Their strife often results in Joseph leaving his mother's home early or not visiting his mother at all, disrupting visitation with his siblings.

The conflict among the siblings manifests itself in various ways. As they do in many households, disputes over watching different television programs represent a peculiar and reliable object of contention among the three siblings in Ms. Campbell's home. Recently, the children have also resorted to calling each other apparently unflattering nicknames based upon their respective states of residence [3] and to comparing their respective schools. Following an incident during which Joseph evidently chased Emily around Ms. Campbell's home with a hammer, Joseph's rela-

---

wise stated, all statutory references are to RSMo. 2000.

**2.** Although incidental to our holding, we observe that there is no evidence whatsoever to support the trial court's assertion that Ms. Campbell does not consider Joseph to be her son. The trial court evidently based this assertion upon a portion of Ms. Campbell's testimony, during which she said: "[Joseph] was upset. He had been playing a game of marbles with my son and my husband's son, with Justin...." It is clear from the context in

which she made this remark that Ms. Campbell was distinguishing between her offspring and her new husband's offspring, and was not implying that Joseph was not her son. After combing the record, we discern no other evidence to support the trial court's finding on this issue.

**3.** Ms. Campbell, Emily and Justin reside in Cincinnati, Iowa, and Mr. Riley and Joseph live in Unionville, Missouri.

tionship with Emily has deteriorated; they apparently have not seen each other during some scheduled visitations, although the reasons for that and the number of times which it has occurred remain unclear.

Whatever the reasons, both Joseph and Emily feel that the siblings are not as close as they once were and both wish that the situation were otherwise. They acknowledge that the arguments attenuate during visits in Mr. Riley's home, where Joseph seems less agitated. Justin denies any change in his relationship with Joseph and feels that things are fine.

■ Deterioration in the relationship between a parent and a child certainly can constitute a substantial change of circumstances, justifying a change in custody. *See, e.g., In re Marriage of Lowe,* 860 S.W.2d 813, 817 (Mo.App. S.D.1993) (deterioration of relationship between mother and daughter justified decision to allow daughter to live with her father); *Gentry v. Simmons,* 754 S.W.2d 579, 581 (Mo.App. W.D.1988) ("This circumstance where the relationship between the child and the custodial parent has deteriorated and where, as here, the child has left the custodial home on her own accord, is sufficient to support a finding that modification of the decree should be ordered.").

In this case, however, there is no evidence that the relationship between Ms. Campbell and the children in her custody has deteriorated. To the contrary, both Justin and Emily are doing extremely well in their mother's home and wish to remain with her despite the problems that occur during some of Joseph's visits.

Without trivializing these problems, they simply do not constitute a substantial change in circumstances here. By all accounts, similar problems existed even before the divorce. The most frequently cited example of sibling conflict now involves control of the television, hardly a problem restricted to this family. The sibling rivalry manifested in competing loyalties to state and school does not seem unusual for children of this age. While it appears that Joseph and Emily have not seen each other during some visits in Ms. Campbell's home, the record also suggests that Joseph and Emily have missed visitation in Mr. Riley's home as well, due to Emily's schedule of activities, including dance lessons. Emily herself did not think that her problems with Joseph were serious, characterizing them as "[j]ust kid problems."

We sympathize with the trial court. In retrospect, the trial court may have concluded that reunification in one household was in the best interests of the children. But having placed the children in different homes originally, the trial court could only modify that arrangement here upon a threshold showing of substantially changed circumstances involving Justin, Emily, or Ms. Campbell. We are "reluctant to inflict further disruption upon the lives of children where the separation of brothers and sisters has already occurred in fact ... Especially if the divided custody has been in effect for some time, the tendency is to continue the status quo." *D.S.P. v. R.E.P. & D.P.,* 800 S.W.2d 766, 770 (Mo.App. E.D.1990). The circumstances here do not overcome that reluctance or justify the change made.

## IV. Conclusion

Because there was no substantial evidence to support the trial court's modification of child custody in this case, we reverse and remand with instructions to reinstate the original decree of dissolution as it pertains to child custody.

HAROLD L. LOWENSTEIN, P.J., and JAMES M. SMART, JR., J., concur.