

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | | |
|---|---|---|
| GORDON D. AUBUCHON, | ) | No. ED101126 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court |
| v. | ) | of St. Charles County |
| | ) | |
| KIMBERLEY H. HALE, | ) | Hon. Richard K. Zerr |
| | ) | |
| Appellant. | ) | FILED:   December 2, 2014 |

<u>OPINION</u>

Kimberly Hale (Mother) and Gordon Aubuchon (Father) appeal the trial court's judgment in post-dissolution proceedings involving child custody and support, relocation, and attorney fees.  We affirm.

**Background**

The parties divorced in September 2009 and received joint legal and physical custody of their two daughters, H.A. and M.A.  Father was ordered to pay child support of $920 per month.  In November 2009, Mother sought a temporary restraining order against Father based on allegations that he had molested M.A.  Mother voluntarily dismissed that petition weeks later but, in February 2010, Father was indicted on two counts of statutory sodomy and was prohibited contact with the children as a condition of his bond.  Father would be acquitted after a jury trial in February 2011, and Children's Division would eventually reverse its probable cause determination from "substantiated" to "unsubstantiated."

In the interim, however, in May 2010, Mother filed a motion seeking sole custody of the children and approval to relocate to Texas. While the motion was pending, in September 2010 Father's child support obligation was increased to $1,680 per month. In July 2011, the trial court entered its judgment denying Mother's motions and, in light of Father's acquittal, ordered therapeutic measures to normalize relations between Father and the children. Mother appealed that judgment and, in December 2012, this court reversed and remanded, holding that the evidence demonstrated changed circumstances warranting consideration whether custody modification and relocation would serve the children's best interests. Aubuchon v. Hale, 384 S.W.3d 217 (Mo. App. E.D. 2012). We specifically found the record lacking any evidence that the parties could co-parent such that joint custody remained a viable option. Id. at 223.

On remand, in December 2013, the trial court heard additional evidence to update the record on the status of the parties and their daughters (then age 14). The court's resulting findings and orders are the subjects of this second appeal. In sum, the court found that the allegations of abuse against Father were not credible and that Mother deliberately – and quite successfully – estranged and alienated the children from Father. Ultimately, however, the court concluded that, after over four years without contact, and given the girls' disdain for Father due to Mother's influence, "there are no current conditions under which the Father can have a meaningful relationship with his children," and "forcing contact between the children and the Father would do more harm than good." Thus, the Court awarded sole custody to Mother and no visitation for Father. The parenting plan specifies that Father retains full access to information regarding the children (*e.g.*, through teachers, doctors, counselors, coaches, etc.) and may send them limited correspondence, and Mother is prohibited from interfering with his efforts.

Though the trial court felt constrained to grant Mother sole custody for the children's best interests, Mother's bad faith proved fatal to her motion to relocate them to Texas. On that question, the court found that Mother's desire to move was largely motivated by her wish to evade Father and escape the court's jurisdiction, noting that Mother had thwarted and would continue to obstruct Father's attempts to re-establish a relationship with the children even in violation of court orders. Additionally, the court judged that relocation was not in the children's best interests in that, after years of turbulence, they were finally well-adjusted to their home, school, and community in St. Charles County.

Also before the trial court on remand were financial matters involving child support and attorney fees. The court found that both parties were under-employed. Mother was employable as a certified teacher but worked as an accounting clerk earning $2,400 per month. Father's monthly income in industrial sales had decreased substantially since 2011, from over $12,000 to just $4,333. Mother had real estate and stock assets totaling $558,000. Father had investment accounts totaling $796,000. On remand, the court relied on the foregoing income figures, stated in the parties' respective updated income and expense statements, to decrease Father's child support obligation to $975 per month.

Finally, Mother sought to recover her attorney fees of $47,648 for the first appeal and of $35,684 on remand. The court ordered Father to pay $10,000 toward Mother's appellate legal fees, as she was the prevailing party on appeal, but it granted no award for remand fees, leaving the parties to pay their own bills.

Mother appeals and asserts that the trial court erred by: (1) denying her motion to relocate to Texas, (2) reducing child support based on Father's decreased income, (3) failing to credit Mother for certain expenses in calculating child support, and (4) awarding only partial attorney

fees from the first appeal and none for the remand proceedings. Father cross-appeals, asserting that the court erred by (1) granting sole custody to Mother and (2) ordering him to pay $10,000 of her appellate legal fees.

**Standard of Review**

On appeal, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Jansen v. Westrich, 95 S.W.3d 214, 217-18 (Mo. App. 2003), citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Additional principles governing our review are articulated below as relevant to the issues.

**Analysis**

*Relocation*

First, Mother challenges the court's denial of her motion to relocate. Under §452.377, a party seeking to relocate must demonstrate "that the proposed relocation is made in good faith and is in the best interest of the child." §452.377.9. "When a court considers whether a parent's desire to relocate a child is in good faith, the question is whether the relocating parent's motive or purpose for relocating is something other than to disrupt or deprive the non-relocating parent of contact with the children." Mantonya v. Mantonya, 311 S.W.3d 392, 399 (Mo. App. W.D. 2010). Here, the trial court found that "Mother has encouraged the estrangement and alienation of the children from their Father" and that "Mother's desire to move the children to Texas is, in great part, motivated by her desire to make it as difficult as possible for Father to have any contact with the children." The record supports these findings. Mother herself expressly confirmed under oath that she sought to eliminate Father completely and was unwilling to allow

4

him contact with the children. Simply put, Mother cannot carry her burden of proof of good faith on this record.

Moreover, the record also supports the trial court's finding that relocation is not in the children's best interest. The guardian *ad litem* summarized the inquiry and articulated her recommendation as follows:

> I don't believe relocation is in the best interest of the girls because both girls are adjusted to their school, they love their school, they have friends, they're involved here, not only in school but also at their church, St. John in Weldon Spring, and I think they've just had too many changes and too much trauma over the last six years, going from Francis Howell to the Catholic schools to a brief period of homeschool to Francis Howell and now having to pick up and move to Texas would not be in their best interest. … Mr. Aubuchon would be erased completely from the girls' lives and I don't believe that's in the best interest.

Despite Mother's attempt to re-litigate the facts, this court does not re-try the issue. Brethorst v. Brethorst, 50 S.W.3d 864, 866 (Mo. App. E.D. 2001). Our standard of review requires great deference to the trial court in determining a child's best interests. J.T.P. v. P.F., 440 S.W.3d 497, 501 (Mo. App. E.D. 2014). Our role is merely to determine whether the record contains sufficient evidence to support the trial court's assessment, accepting all evidence and inferences favorable to the judgment. Id. The trial court's finding that relocation would not serve the children's best interests is supported by substantial evidence and is not against the weight of the evidence. Mother's first point is denied.[1]

---

[1] We reject Mother's contention that this court's prior mandate precludes this result. In the first appeal, we deemed dispositive Mother's points I and II, which challenged the trial court's order for continued joint custody due to changed circumstances and for the children's best interests. We reversed on those points and remanded for reconsideration as to custody. We did not reach Mother's other points but noted that, "because the relocation issue is interrelated, the judgment is also reversed and remanded with regard to whether relocation would be in the best interests of the children." Contrary to Mother's interpretation, this statement was not intended to decide the point summarily, dispense with the statutory element of good faith, or tie the trial court's hands to a particular result. It simply clarified that, on remand, the trial court should also revisit the question of relocation under §452.377.9, which requires both good faith and best interests. The trial court has discretion to re-open the record and receive additional evidence on remand. See Hamer v. Nicholas, 186 S.W.3d 884 (Mo. App. W.D. 2006). Given the time elapsed since its earlier judgment and the critical importance of determining the facts based on current information,

*Custody*

In his cross-appeal, Father contends that the trial court erred in granting sole custody to Mother and no visitation to Father because Mother deliberately alienated the children from him and certain facts in the record belie a conclusion that the children don't want to see him. Specifically, Father emphasizes that M.A. enjoyed visiting with him over lunch at school one day (evidenced by a video recording) and indicated a desire to see him again, but the girls' primary counselor was unaware of this when she formed her recommendation against visitation. In short, the record contains conflicting evidence as to the children's wishes.

While we sympathize with Father's plight, his legal argument succumbs to this court's standard of review, which requires that we accept the trial court's resolution of conflicting evidence and presume that it reviewed all of the evidence and decided the matter in the children's best interests. Riley v. Campbell, 89 S.W.3d 551, 552 (Mo. App. W.D. 2002). Here, the trial court's detailed factual findings and reasoning demonstrate that it did indeed carefully consider the entire record, including the conflicting evidence about M.A.'s feelings toward Father, but ultimately it concluded that M.A.'s ambivalence was outweighed by Mother's influence.

> The children's view of Father has declined while the Mother has had sole custody. … The children did not express fear of their Father until after Mother lodged her complaint against Father and began restricting his contact with the children. … M.A.'s school counselor … testified that M.A. seemed happy, fine being with her Father, just talking, smiling and laughing. … M.A. became visibly upset when reminded about the relationship she had once enjoyed with her Father.

> This court having now on two occasions been able to observe the testimony of M.A. and recognizing the significance of the exoneration of Father by every official body which made allegations against him, does not find the allegations made by M.A. to be credible.

particularly given the evolution of this case, the trial court properly heard additional evidence as to whether relocation was sought in good faith and was in the children's best interests. As stated above, its updated findings and conclusions are fully supported by the remand record.

> While this Court does not find credible the allegations that Father has abused either of his children, it is clear that both children function as if they had been abused. Whether that perception is as a result of being told they were abused by Mother … it is clear to this Court that M.A. believes she was abused by her Father. In spite of that belief, it is clear from the lunch video that M.A. is conflicted. … The girls are now 14 and are ever more entrenched in their desire to have no contact with their Father. … Due to all that has transpired, forcing contact between the children and the Father would do more harm than good.

This assessment finds support in the record through submissions of both the GAL and the children's therapeutic supervised visitation (TSV) counselor, who both reached the same conclusion.[2]

Furthermore, the trial court was constrained to resolve the conflict within the bounds of this court's first opinion, where we found no factual basis for the continuation of joint custody given the total breakdown in parental communication and cooperation. The trial court on remand described its unenviable dilemma as follows.

> So the Court is now left with the task of choosing to place the children in the sole legal and physical custody of the Father, whom they have virtually not seen for many years and with whom they express no interest in having any contact, or with the Mother, who seems almost proud of the fact that she refuses to follow the law, the judgment of the court, or any other authority which would involve giving the Husband any part to play in the lives of "their" children.

This case illustrates the gravity of and rationale for this court's great deference to the trial court in custody cases, especially in such an irreparable predicament of circumstances. In respect for our standard of review and in deference to the trial court's superior position – after seven years presiding over this family's case – to craft a solution in the children's best interests, we will not second-guess its discretion or substitute our judgment for its own. While we agree that

---

[2] Though reluctant to impose visitation against the children's emotional well-being, the court attempted to preserve Father's parental rights through the parenting plan by allowing him to send correspondence and access information, hoping "that with the passage of time the children will become open to a renewal of their relationship with Father." In essence, the trial court encouraged reconciliation at the election of the children once independent of Mother's influence.

Mother's obstructionism is contemptible, this court's inquiry concerns only whether the record contains sufficient evidence to support the trial court's determination of the children's best interests. This record satisfies that standard. Father's first point is denied.

*Child Support*

Turning to financial matters, Mother contends that the trial court erred by reducing Father's child support obligation. Mother insists that the court should have imputed a higher income to Father based on his previous earnings rather than accepting the figure stated in his financial forms (point II). Mother also faults the trial court for ordering Mother to assume all medical and extra-curricular expenses without a corresponding credit on Form 14 (point III).

With regard to point II, Mother engages in a lengthy and speculative factual portrayal of Father's finances, alleging that Father and his employer re-characterized his salary as a loan in order to skew his earnings for purposes of child support. But Mother's assertion again ignores this court's standard of review. We defer to the trial court on matters of credibility and view the evidence in the light most favorable to its decision. State ex rel. Stirnaman v. Calderon, 67 S.W.3d 637, 639 (Mo. App. W.D. 2002). We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion and will not disturb an award of child support unless the evidence is palpably insufficient to support it. Id. Moreover, the imputation of income is entirely discretionary, and "what constitutes appropriate circumstances to impute income will depend on the facts and must be determined on a case-by-case basis." Appling v. Appling, 156 S.W.3d 454, 459 (Mo. App. E.D. 2005). Here, the trial court found both parties under-employed (and hence could have imputed additional income to Mother) but it accepted Father's explanation that his reduction in income was attributable to Mother's actions and the ongoing litigation. The trial court was free to believe him.

Similarly on point III, the trial court implicitly rejected Mother's financial evidence and instead exercised its discretion to allocate medical and extraordinary expenses in a separate order as it deemed just under the circumstances (noting elsewhere that Mother sought "a custody arrangement tantamount to a termination of [Father's] parental rights while very much keeping him obligated financially as a parent"). We find no manifest abuse of discretion in the court's allocation of financial responsibilities given the circumstances of this case. Mother's points II and III are denied.

*Attorney Fees*

Finally, both parties challenge the trial court's partial allocation of attorney fees. Mother advocates for a larger award in her favor, while Father laments the partial award to his detriment. The trial court has discretion to award attorney fees after considering all relevant factors, including the financial resources of both parties, the merits of the case, and the conduct of the parties. §452.355.1. An appellate court will reverse only upon a showing that the trial court abused its broad discretion. Manning v. Manning, 292 S.W.3d 459, 466 (Mo. App. E.D. 2009). To demonstrate an abuse of discretion, the complaining party must prove that the award is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. Id. We find no abuse of discretion in the trial court's award here.

The court clearly considered numerous factors, including the parties' financial means, the merits and complexity of the case, Mother's status as the prevailing party on appeal, Mother's representation by two attorneys simultaneously at every stage of litigation, and Father's good faith in objecting to Mother's relocation. Under §452.377.13, a court shall not order an award of attorney fees against a party who objects in good faith to the relocation of a child's principal residence. The record supports the trial court's finding that Father's objection to relocation was

9

in good faith, so the trial court's denial of fees on remand was entirely proper. However, given Father's superior financial resources, we cannot say that the trial court's award of just over one-fifth of Mother's fees from the first appeal rises to the level of an abuse of discretion. Both parties' points challenging the trial court's judgment as to attorney fees are denied.

## Result

The trial court's judgment is affirmed in all respects.


_____
CLIFFORD H. AHRENS, Judge

Lawrence E. Mooney, P. J., concurs
Glenn A. Norton, J., concurs.